# EXHIBIT 5

Filed
Stephnie Menke
District Clerk
11/1/2022 2:35 PM
Potter County, Texas
By KG Deputy

CAUSE NO. 111269-D-CV
_____

| | | |
|---|---|---|
| Arrow Child & Family Ministries | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| | § | POTTER COUNTY, TEXAS |
| | § | |
| Rite of Passage, Inc. | § | 320th |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ARROW CHILD & FAMILY MINISTRIES ("Arrow" or "Plaintiff"), complaining of RITE OF PASSAGE, INC. ("ROP" or "Defendant"), and files this Original Petition and in support thereof would show unto the Honorable Court as follows:

### I. DISCOVERY CONTROL PLAN

1.      Discovery in this case should be conducted under Level 2 as described by Rule 190.3 of the Texas Rules of Civil Procedure.

### II. PARTIES

2.      Plaintiff, Arrow Child & Family Ministries, is a Texas corporation with its principal place of business in Spring, Texas.

3.      Defendant, Rite of Passage, Inc. is a foreign entity formed in the state of Nevada, registered to do business in Texas. Rite of Passage may be served with process through its registered agent, Alicia Davis, at 4404 Meadowview Lane, Sachse, Texas 75048, or wherever she may be found.

345376

RECEIVED
SECRETARY OF STATE
NOV 2 1 2022
Service of Process

### III. NATURE OF ACTION

4.     On November 1, 2021, Plaintiff entered into a valid, enforceable, and binding contract ("the Lease") to lease a facility located at 4655 S Farm to Market Rd 1258, Amarillo, TX 79118 to Defendant. A true and correct copy of the Lease is attached hereto as Exhibit A.

5.     The parties agreed that Defendant would pay Plaintiff a set monthly rental amount on the first day of each month for a period of five years, and that each year the monthly rental amount would increase to a set amount.

6.     On August 12, 2022, Defendant notified Plaintiff that they would be terminating the Lease within 60-days, stating that it was entitled to early termination under Section 1(j) of the Lease because it had lost its contracts with all SSC provider services.

7.     Upon information and belief, Defendant acted intentionally to terminate or cancel all their remaining SSCC contracts in order to take advantage of the early termination provision within the Lease.

8.     After repeated attempts to seek information from Defendant regarding the reason for early termination and proof that Defendant's service providers cancelled their contracts rather than ROP, Plaintiff has yet to receive any information confirming Defendant's rationale for termination.

### IV. JURISDICTION AND VENUE

9.     The court has subject matter jurisdiction over this controversy because Plaintiff seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees.

10.     Venue is proper because a substantial part of the events or omissions giving rise to these claims occurred in Potter County, Texas. TX Civ. Prac. and Rem. Code § 15.002(a)(3).

## V. BACKGROUND FACTS

11.     Plaintiff and Defendant are both nonprofit organizations providing services and residential care to foster children and at-risk youth in Texas.

12.     Defendant contracted with Plaintiff to rent a facility located at 4655 S Farm to Market Rd 1258, Amarillo, TX 79118 to Defendant. Exhibit A §1(b). Defendant was to use the property to rent beds out to Single Source Continuum Contractors (SSCC) who work as contractors for Texas CPS, providing services, foster homes, and other living arrangements for children in the foster system.

13.     The parties agreed that Defendant would pay Plaintiff a set monthly rental amount on the first day of each month. That rental amount was to begin at $20,000.00 in the first year of the Lease with incremental raises each year as follows: Year 2 - $20,600.00/month; Year 3 - $21,218.00/month; Year 4 - $21,854.00/month; Year 5 - $22,510.18/month. Exhibit A §1(h).

14.     Plaintiff delivered possession of the property to Defendant in the conditions provided for under the Lease.

15.     After less than a year in the facility, Defendant notified Plaintiff on August 12, 2022, that it would be voluntarily vacating the facility and terminating the lease in 60-days. Exhibit B ("ROP Notice of Termination"). Defendant cited to a Section 1(j) of the Lease, allowing for early termination if funding for services provided by Defendant became

unavailable, suspended, or lost, or if Defendant's SSCC contracts were terminated. Exhibit A §1(j).

16.     Plaintiff requested information from Defendant to support Defendant's contention that the service contracts and funding were lost for reasons not caused or created by Defendant itself. Defendant provided evidence of overdue receivables but did not provide any information regarding efforts to maintain its SSCC contracts or renegotiate those contracts in good faith at the request of the SSCC providers. Exhibit C ("Arrow's Request for Information").

17.     Instead, Defendant paid a pro-rated rental rate for the month of October 2022, in the amount of $7,232.88, and vacated the premises early, despite notice from Plaintiff that the termination notice was not accepted without proof that the Lease provision of early termination was properly invoked.

18.     Upon subsequent inspection of the premises, Plaintiff discovered that Defendant had shut off all utilities prior to vacating the premises. Plaintiff incurred expenses to re-connect all utility services in order to protect the premises from any future damage.

19.     At the time of filing this Original Petition, Defendant has still not provided the information as requested by Plaintiff and has shown clear intent to cease all rental payment owed under the remainder of the Lease, resulting in anticipatory breach.

20.     All conditions precedent to Plaintiff's recovery have occurred.

## VI. BREACH OF CONTRACT

21.     The above allegations are incorporated by reference as if stated more fully herein.

22.     Plaintiff and Defendant entered into a valid and legally enforceable contract whereby Defendant agreed pay a set rental amount on a monthly basis for use and possession of Plaintiff's property at 4655 S Farm to Market Rd 1258, Amarillo, TX 79118.

23.     The parties agreed that monthly rental payments would be set as follows:

Year 1 - $20,000.00/month;

Year 2 - $20,600.00/month;

Year 3 - $21,218.00/month;

Year 4 - $21,854.00/month; and

Year 5 - $22,510.18/month.

24.     Plaintiff provided Defendant with access and possession of the property as agreed.

25.     Defendant occupied the property and timely paid rent for less than a year. On August 12, 2022, Defendant attempted to provide 60-day notice of an intent terminate the lease early because it claimed that all of its service provider contracts had been terminated and no funding for its services remained.

26.     Plaintiff received information that Defendant's service provider contracts had not only been cancelled, but that Defendant had acted affirmatively to ensure that each contract would be terminated. Exhibit D ("SSCC Termination Notices"). Defendant breached material provisions of its contracts with SSCC providers, failed to renegotiate those contracts in good faith, and otherwise acted to ensure that all contracts were terminated so it could take advantage of the early termination provision in the Lease with Plaintiff.

27.   Defendant vacated the premises and has communicated an intent to pay only a pro-rated portion of the rent for October 2022 as well as complete cessation of all further rental payments, resulting in anticipatory breach of contract.

28.   Texas law is clear that a contractual duty to perform is not excused "when a promisor wrongfully prevents a condition from occurring . . ." *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000); *see also HDS Retail N. Am., L.P. v. PMG Intern., Ltd.*, No. CIV.A. H-10-3399, 2012 WL 4485332 at *1 (S.D. Tex. Sept. 27, 2012). Defendant had no contractual right to early termination of the rental contract because the sole basis for termination results from the intentional and affirmative actions of Defendant which caused their provider service contracts to end.

29.   Defendant has yet to provide any information or proof that its service provider contracts were terminated as a result of the service provider's actions, rather than Defendant's own intentional actions. As such, Defendant's early termination of the Lease, without any lawful basis, is a material breach of such contract.

30.   Defendant's breach of contract includes breach for the entirety of the remaining rental payments under the Lease.

## VII. ATTORNEY FEES

31.   Plaintiff is entitled to recover reasonable and necessary attorney fees under Chapter 38 of the Texas Civil Practice and Remedies Code because this is a suit for breach of a written contract. Tex. Civ. Prac. & Rem. Code §§ 38.001(b)(8).

## VIII. DAMAGES

32.   As a result of Defendant's breach of contract described above, Plaintiff has suffered the following damages:

- Loss of monthly rental payments for the remainder of the Lease term, amounting to $1,046,953.28;

- Cost to reconnect and maintain utilities at the rental property;

- Actual damage to the rental property;

- Reasonable legal fees incurred in connection with this action; and

- Court costs incurred in connection with this action.

33.     Therefore, Plaintiff sues for a maximum amount not to exceed the total of all remaining rental payments left on the Lease term, incurred utility expenses, actual property damage, plus attorney's fees and court costs.

## IX. JURY DEMAND

34.     Plaintiff demands a jury trial. Plaintiff is tendering the jury fee to the clerk of the court as required by Texas Rule of Civil Procedure 216 along with filing of this Petition.

## X. PRAYER

WHEREFORE, PREMISES CONSIDERED, Arrow Child & Family Ministries prays that Rite of Passage, Inc. be cited to appear and answer herein and that on final trial hereof the Arrow Child & Family Ministries be awarded:

a.     Actual damages, including all remaining rental payments under the Lease;

b.     Reasonable and necessary attorney fees as determined by the court;

c.     Costs of court;

d.     Pre-judgment interest at the legal rate;

e.     Post-judgment interest at the legal rate until paid; and

f.     All other relief at law or equity to which Arrow Child & Family Ministries may be justly entitled.

Respectfully submitted,

STILWELL, EARL & APOSTOLAKIS, LLP

By      /s/Steven C. Earl
      Steven C. Earl
      State Bar No. 24002028
      1400 Woodloch Forest Dr., Suite 590
      The Woodlands, Texas 77380
      Tel:   281/419-6200
      Fax:  281/419-0250
      Attorney for Plaintiff

Plaintiff's Original Petition
Page 8

Filed
Stephanie Menke
District Clerk
11/1/2022 2:35 PM
Potter County, Texas
By KG Deputy

# REQUEST FOR ISSUANCE

**CAUSE NUMBER**: 111269-D-CV _____

**TYPE OF ISSUANCE**: *E-FILING-YOU MUST ASSESS THE TYPE OF ISSUANCE, TYPE OF SERVICE, SERVICE FEES, AND COPY FEES ACCORDINGLY*

- ☒ CITATION
- ☐ PRECEPT
- ☐ TRO
- ☐ PROTECTIVE ORDER
- ☐ ABSTRACT OF JUDGMENT
- ☐ WRIT OF EXECUTION
- ☐ OTHER: _____

**TYPE OF SERVICE**:

- ☐ POTTER COUNTY SHERIFF *SERVICE FEE AND COPY FEE REQUIRED*
- ☐ CIVIL PROCESS SERVER-AUTHORIZED PERSON TO PICK-UP: _____
- ☐ POSTING *SERVICE FEE AND COPY FEE REQUIRED*
- ☐ PUBLICATION *SERVICE FEE REQUIRED*
- ☐ CERTIFIED MAIL *SERVICE FEE AND COPY FEE REQUIRED*
- ☐ TO BE MAILED TO PARTY REQUESTING SERVICE *SELF ADDRESSED STAMPED ENVELOPE AND/OR POSTAGE FEE REQUIRED*
- ☒ TO BE EMAILED TO PARTY REQUESTING SERVICES-*MUST INCLUDE EMAIL ADDRESS*

**TITLE OF DOCUMENT**: Plaintiff's Original Petition _____

*FOR EACH PARTY SERVED YOU MUST ASSESS THE APPROPRIATE NUMBER OF COPIES OF THE DOCUMENT TO BE SERVED * UNLESS CLERK IS TO EMAIL, THEN NO COPY FEE IS REQUIRED*

**FILE MARKED DATE OF DOCUMENT TO BE SERVED:** 11 / 01 / 2022

**PARTY TO BE SERVED**: (PLEASE FILL OUT A NEW REQUEST FORM PER PARTY TO BE SERVED)

NAME: Rite of Passage _____

ADDRESS: 4404 Meadowview Lane, Sachse, TX 75048 _____

AGENT, IF APPLICABLE: Alicia Davis _____

**PARTY/ATTORNEY REQUESTING SERVICE:**

NAME: Steven C. Earl _____

MAILING ADDRESS: 1400 Woodloch Forest Dr., Ste. 590, The Woodlands, TX 77380 _____

PHONE NUMBER: 281-419-6200 _____   FAX NUMBER: 281-419-0250 _____

EMAIL ADDRESS: heather@woodlandstxlawfirm.com _____

Copy from re:SearchTX

# REQUEST FOR ISSUANCE

Filed
Stephnie Menke
District Clerk
11/10/2022 4:03 PM
Potter County, Texas
By KG Deputy

**CAUSE NUMBER**:  111269-D-CV

**TYPE OF ISSUANCE**: *E-FILING-YOU MUST ASSESS THE TYPE OF ISSUANCE,
TYPE OF SERVICE, SERVICE FEES, AND COPY FEES ACCORDINGLY*

- ☒ CITATION
- ☐ PRECEPT
- ☐ TRO
- ☐ PROTECTIVE ORDER
- ☐ ABSTRACT OF JUDGMENT
- ☐ WRIT OF EXECUTION
- ☐ OTHER: _____

**TYPE OF SERVICE**:

- ☐ POTTER COUNTY SHERIFF *SERVICE FEE AND COPY FEE REQUIRED*
- ☐ CIVIL PROCESS SERVER-AUTHORIZED PERSON TO PICK-UP: _____
- ☐ POSTING *SERVICE FEE AND COPY FEE REQUIRED*
- ☐ PUBLICATION *SERVICE FEE REQUIRED*
- ☐ CERTIFIED MAIL *SERVICE FEE AND COPY FEE REQUIRED*
- ☐ TO BE MAILED TO PARTY REQUESTING SERVICE *SELF ADDRESSED STAMPED ENVELOPE AND/OR POSTAGE FEE REQUIRED*
- ☒ TO BE EMAILED TO PARTY REQUESTING SERVICES-*MUST INCLUDE EMAIL ADDRESS*

**TITLE OF DOCUMENT**:  Plaintiff's First Amended Petition

*FOR EACH PARTY SERVED YOU MUST ASSESS THE APPROPRIATE NUMBER OF COPIES OF THE DOCUMENT TO BE SERVED * UNLESS CLERK IS TO EMAIL, THEN NO COPY FEE IS REQUIRED*

**FILE MARKED DATE OF DOCUMENT TO BE SERVED:**  11 / 10 / 2022

**PARTY TO BE SERVED**: (PLEASE FILL OUT A NEW REQUEST FORM PER PARTY TO BE SERVED)

NAME:  Rite of Passage, Inc.

ADDRESS:  c/o Texas Secretary of State, P.O. Box 12079, Austin, TX 78711-2079

AGENT, IF APPLICABLE:  Texas Secretary of State

**PARTY/ATTORNEY REQUESTING SERVICE:**

NAME:  Steven C. Earl

MAILING ADDRESS:  1400 Woodloch Forest Dr., Ste. 590, The Woodlands, TX 77380

PHONE NUMBER:  281-419-6200     FAX NUMBER:  281-419-0250

EMAIL ADDRESS:  heather@woodlandstxlawfirm.com

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Heather Scott on behalf of Steven Earl
Bar No. 24002028
heather@meslawfirm.com
Envelope ID: 70082019
Status as of 11/10/2022 4:26 PM CST

Associated Case Party: Arrow Child & Family Ministries

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Steven CEarl | | steven@woodlandstxlawfirm.com | 11/10/2022 4:03:38 PM | SENT |
| Emory C.Powers | | emory@woodlandstxlawfirm.com | 11/10/2022 4:03:38 PM | SENT |
| Heather Scott | | Heather@woodlandstxlawfirm.com | 11/10/2022 4:03:38 PM | SENT |
| Steven CEarl | | efiletxsce@gmail.com | 11/10/2022 4:03:38 PM | SENT |

Filed
Stephnie Menke
District Clerk
11/10/2022 4:03 PM
Potter County, Texas
By KG Deputy

CAUSE NO. 111269-D-CV

| Arrow Child & Family Ministries | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| | § | POTTER COUNTY, TEXAS |
| | § | |
| Rite of Passage, Inc. | § | |
| *Defendant.* | § | 320TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ARROW CHILD & FAMILY MINISTRIES ("Arrow" or "Plaintiff"), complaining of RITE OF PASSAGE, INC. ("ROP" or "Defendant"), and files this First Amended Petition and in support thereof would show unto the Honorable Court as follows:

### I. DISCOVERY CONTROL PLAN

1.      Discovery in this case should be conducted under Level 2 as described by Rule 190.3 of the Texas Rules of Civil Procedure.

### II. PARTIES

2.      Plaintiff, Arrow Child & Family Ministries, is a Texas corporation with its principal place of business in Spring, Texas.

3.      Defendant, Rite of Passage, Inc. is a foreign entity formed in the state of Nevada, registered to do business in Texas. ROP is required by law to appoint and to maintain a registered agent in the State of Texas, who is currently designated as Alicia Davis, located at 4404 Meadowview Lane, Sachse, Texas 75048. However, ROP has failed to maintain its registered agent at the registered address for service of process and after

Plaintiff's First Amended Petition
Page 1

Copy from re:SearchTX

reasonable diligence, its registered agent cannot be found at the listed address. For these reasons, pursuant to Texas Business Organizations Code § 5.251(1) and Texas Civil Practice & Remedies Code § 17.044(a), The Texas Secretary of State shall serve as a substitute agent of Rite of Passage, Inc. on whom citation may be served. Upon receipt of said citation, the Secretary of State shall immediately cause one of the copies of the Citation and this First Amended Petition to be forwarded by certified mail, return receipt requested, addressed to Rite of Passage, Inc. at the registered office on file with the Secretary of State, which is 4404 Meadowview Lane, Sachse, Texas 75048 or wherever it may be found.

### III. NATURE OF ACTION

4.      On November 1, 2021, Plaintiff entered into a valid, enforceable, and binding contract ("the Lease") to lease a facility located at 4655 S Farm to Market Rd 1258, Amarillo, TX 79118 to Defendant. A true and correct copy of the Lease is attached hereto as Exhibit A.

5.      The parties agreed that Defendant would pay Plaintiff a set monthly rental amount on the first day of each month for a period of five years, and that each year the monthly rental amount would increase to a set amount.

6.      On August 12, 2022, Defendant notified Plaintiff that they would be terminating the Lease within 60-days, stating that it was entitled to early termination under Section 1(j) of the Lease because it had lost its contracts with all SSC provider services.

7.      Upon information and belief, Defendant acted intentionally to terminate or cancel all their remaining SSCC contracts in order to take advantage of the early termination provision within the Lease.

Plaintiff's First Amended Petition
Page 2

Copy from re:SearchTX

8.      After repeated attempts to seek information from Defendant regarding the reason for early termination and proof that Defendant's service providers cancelled their contracts rather than ROP, Plaintiff has yet to receive any information confirming Defendant's rationale for termination.

## IV. JURISDICTION AND VENUE

9.      The court has subject matter jurisdiction over this controversy because Plaintiff seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees.

10.      Venue is proper because a substantial part of the events or omissions giving rise to these claims occurred in Potter County, Texas. TX Civ. Prac. and Rem. Code § 15.002(a)(3).

## V. BACKGROUND FACTS

11.      Plaintiff and Defendant are both nonprofit organizations providing services and residential care to foster children and at-risk youth in Texas.

12.      Defendant contracted with Plaintiff to rent a facility located at 4655 S Farm to Market Rd 1258, Amarillo, TX 79118 to Defendant. Exhibit A §1(b). Defendant was to use the property to rent beds out to Single Source Continuum Contractors (SSCC) who work as contractors for Texas CPS, providing services, foster homes, and other living arrangements for children in the foster system.

13.      The parties agreed that Defendant would pay Plaintiff a set monthly rental amount on the first day of each month. That rental amount was to begin at $20,000.00 in the first year of the Lease with incremental raises each year as follows: Year 2 -

Plaintiff's First Amended Petition
Page 3

Copy from re:SearchTX

$20,600.00/month; Year 3 - $21,218.00/month; Year 4 - $21,854.00/month; Year 5 - $22,510.18/month. Exhibit A §1(h).

14.     Plaintiff delivered possession of the property to Defendant in the conditions provided for under the Lease.

15.     After less than a year in the facility, Defendant notified Plaintiff on August 12, 2022, that it would be voluntarily vacating the facility and terminating the lease in 60-days. Exhibit B ("ROP Notice of Termination"). Defendant cited to a Section 1(j) of the Lease, allowing for early termination if funding for services provided by Defendant became unavailable, suspended, or lost, or if Defendant's SSCC contracts were terminated. Exhibit A §1(j).

16.     Plaintiff requested information from Defendant to support Defendant's contention that the service contracts and funding were lost for reasons not caused or created by Defendant itself. Defendant provided evidence of overdue receivables but did not provide any information regarding efforts to maintain its SSCC contracts or renegotiate those contracts in good faith at the request of the SSCC providers. Exhibit C ("Arrow's Request for Information").

17.     Instead, Defendant paid a pro-rated rental rate for the month of October 2022, in the amount of $7,232.88, and vacated the premises early, despite notice from Plaintiff that the termination notice was not accepted without proof that the Lease provision of early termination was properly invoked.

18.     Upon subsequent inspection of the premises, Plaintiff discovered that Defendant had shut off all utilities prior to vacating the premises. Plaintiff incurred

Plaintiff's First Amended Petition
Page 4

Copy from re:SearchTX

expenses to re-connect all utility services in order to protect the premises from any future damage.

19.     At the time of filing this First Amended Petition, Defendant has still not provided the information as requested by Plaintiff and has shown clear intent to cease all rental payment owed under the remainder of the Lease, resulting in anticipatory breach.

20.     All conditions precedent to Plaintiff's recovery have occurred.

### VI. BREACH OF CONTRACT

21.     The above allegations are incorporated by reference as if stated more fully herein.

22.     Plaintiff and Defendant entered into a valid and legally enforceable contract whereby Defendant agreed pay a set rental amount on a monthly basis for use and possession of Plaintiff's property at 4655 S Farm to Market Rd 1258, Amarillo, TX 79118.

23.     The parties agreed that monthly rental payments would be set as follows:

Year 1 - $20,000.00/month;

Year 2 - $20,600.00/month;

Year 3 - $21,218.00/month;

Year 4 - $21,854.00/month; and

Year 5 - $22,510.18/month.

24.     Plaintiff provided Defendant with access and possession of the property as agreed.

25.     Defendant occupied the property and timely paid rent for less than a year. On August 12, 2022, Defendant attempted to provide 60-day notice of an intent terminate

Copy from re:SearchTX

the lease early because it claimed that all of its service provider contracts had been terminated and no funding for its services remained.

26.      Plaintiff received information that Defendant's service provider contracts had not only been cancelled, but that Defendant had acted affirmatively to ensure that each contract would be terminated. Exhibit D ("SSCC Termination Notices"). Defendant breached material provisions of its contracts with SSCC providers, failed to renegotiate those contracts in good faith, and otherwise acted to ensure that all contracts were terminated so it could take advantage of the early termination provision in the Lease with Plaintiff.

27.      Defendant vacated the premises and has communicated an intent to pay only a pro-rated portion of the rent for October 2022 as well as complete cessation of all further rental payments, resulting in anticipatory breach of contract.

28.      Texas law is clear that a contractual duty to perform is not excused "when a promisor wrongfully prevents a condition from occurring . . ." *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000); *see also HDS Retail N. Am., L.P. v. PMG Intern., Ltd.*, No. CIV.A. H-10-3399, 2012 WL 4485332 at *1 (S.D. Tex. Sept. 27, 2012). Defendant had no contractual right to early termination of the rental contract because the sole basis for termination results from the intentional and affirmative actions of Defendant which caused their provider service contracts to end.

29.      Defendant has yet to provide any information or proof that its service provider contracts were terminated as a result of the service provider's actions, rather than Defendant's own intentional actions. As such, Defendant's early termination of the Lease, without any lawful basis, is a material breach of such contract.

Plaintiff's First Amended Petition
Page 6

Copy from re:SearchTX

30.     Defendant's breach of contract includes breach for the entirety of the remaining rental payments under the Lease.

## VII. ATTORNEY FEES

31.     Plaintiff is entitled to recover reasonable and necessary attorney fees under Chapter 38 of the Texas Civil Practice and Remedies Code because this is a suit for breach of a written contract. Tex. Civ. Prac. & Rem. Code §§ 38.001(b)(8).

## VIII. DAMAGES

32.     As a result of Defendant's breach of contract described above, Plaintiff has suffered the following damages:

- Loss of monthly rental payments for the remainder of the Lease term, amounting to $1,046,953.28;

- Cost to reconnect and maintain utilities at the rental property;

- Actual damage to the rental property;

- Reasonable legal fees incurred in connection with this action; and

- Court costs incurred in connection with this action.

33.     Therefore, Plaintiff sues for a maximum amount not to exceed the total of all remaining rental payments left on the Lease term, incurred utility expenses, actual property damage, plus attorney's fees and court costs.

## IX. JURY DEMAND

34.     Plaintiff demands a jury trial. Plaintiff is tendering the jury fee to the clerk of the court as required by Texas Rule of Civil Procedure 216 along with filing of this Petition.

Copy from re:SearchTX

## X. PRAYER

WHEREFORE, PREMISES CONSIDERED, Arrow Child & Family Ministries prays that Rite of Passage, Inc. be cited to appear and answer herein and that on final trial hereof the Arrow Child & Family Ministries be awarded:

a.  Actual damages, including all remaining rental payments under the Lease;

b.  Reasonable and necessary attorney fees as determined by the court;

c.  Costs of court;

d.  Pre-judgment interest at the legal rate;

e.  Post-judgment interest at the legal rate until paid; and

f.  All other relief at law or equity to which Arrow Child & Family Ministries may be justly entitled.

Respectfully submitted,

STILWELL, EARL & APOSTOLAKIS, LLP

By____/s/Steven C. Earl_____
            Steven C. Earl
            State Bar No. 24002028
            Emory C. Powers
            State Bar No. 24131597
1400 Woodloch Forest Dr., Suite 590
The Woodlands, Texas 77380
Tel:    281/419-6200
Fax:    281/419-0250
Attorney for Plaintiff

Copy from re:SearchTX

LEASE AGREEMENT

November 1, 2021

THIS LEASE AGREEMENT (the "Lease") is entered into as of ~~October ----, 2021~~, between **ARROW CHILD & FAMILY MINISTRIES**, a Texas non-profit corporation ("Landlord"), whose address is 2929 FM 2920 Road, Spring, Texas 77388, and **RITE OF PASSAGE**, a Nevada corporation("Tenant"), whose address until the Commencement Date (as hereinafter defined) is 2560 Business Parkway, Suite A, Minden, NV 89423.

 1. <u>Definitions and Certain Basic Provisions.</u> The following capitalized terms shall have the meaning indicated for purposes of this Lease:

 (a) Intentionally Omitted.

 (b) "Buildings": Landlord's property located at 4655 S FM Road 1258 (S Pullman Road) in the City of Amarillo, Randall County, Texas, 79118, consisting of approximately seven (7) buildings of approximately 32,693 square feet located on the land consisting of approximately 10 acres on which such property is located being described or shown on <u>Exhibit A</u> attached hereto.

 (c) "Complex": the Buildings, the land on which the Buildings are located, and parking areas, facilities, structures and drives thereon, and any future additions or improvements thereto (collectively, the "Complex"). The improvements located on the Complex include the Buildings, including but not limited to two (2) residential treatment centers ("RTC 1 and RTC 2"), and ancillary buildings, a playground and a livestock pen.

 (d) "Premises": the leased premises located in the Buildings and being conclusively deemed to contain approximately 32,693 square feet of rentable area. RTC 1 and RTC 2 are shown on the floor plan attached as <u>Exhibit B</u> hereto.

 (e) "Commencement Date": the Lease Term shall commence on the full execution of this Lease by Landlord and Tenant, which is expected to be on or before **November 1, 2021**.

 (f) "Lease Term": Commencing on the Commencement Date and continuing for five (5) years and zero (0) months after the Commencement Date; provided that if the Commencement Date is a date other than the first day of a calendar month, the Lease Term shall be extended by the number of days remaining in the calendar month in which the Commencement Date occurs. The anticipated expiration date is **October 31, 2026** (the "Expiration Date"). The term "Lease Term" shall also include any Renewal Terms.

 (g) "Calendar Year": For the purpose of this Lease, Calendar Year shall be a period of 12 months commencing on each January 1 during the Lease Term, except that the first Calendar Year shall be that period from and including the Commencement Date through December 31 of that same year, and the last Calendar Year shall be that period from and including the last January 1 of the Term through the earlier of the Expiration Date or date of Lease termination.

 (h) "Base Rental": Base Rental shall be paid to Landlord, at the address provided herein above or as may be amended by Landlord, on the first (1ˢᵗ) day of each month during the Lease Term as follows:

| | |
|---|---|
| **Year 1** | **$20,000.00/per month** |
| **Year 2** | **$20,600.00/per month** |
| **Year 3** | **$21,218.00/per month** |
| **Year 4** | **$21,854.00/per month** |
| **Year 5** | **$22,510.18/per month** |

 (i) "Security Deposit": $20,000, such Security Deposit being due and payable upon execution of this Lease.

 (j) "Tenant's Early Termination Right". In the event either (i) Tenant's SSCC Provider Services Agreement ("Tenant's Provider Agreement"); (ii) the facility license for the Premises issued by Texas Health and Human Services ("Tenant's License") is terminated; or (iii) funding for the services provided by Tenant under Tenant's Provider Agreement is unavailable, suspended or lost ("Loss of Funding") for any reason, Tenant shall have the right to terminate this

Copy from re:SearchTX

**EXHIBIT A**

Lease ("Tenant's Early Termination Right") by providing Landlord sixty (60) day prior written notice that Tenant it exercising Tenant's Early Termination Right due to any one or combination of (i) the termination of Tenant's Provider Agreement; (lii) the termination  Tenant's License, or (iii) Loss of Funding whereupon this Lease will terminate on the 60th day after Landlord's receipt of Tenant's written notice it is exercising its Early Termination Right pursuant to this provision.

> (k)     "Renewal Option": Provided Tenant is not in default under this Lease beyond any applicable cure period, Tenant shall have two (2) renewal options of five (5) years for each term ("Renewal Term") upon the same terms and conditions contained herein except rent during Renewal Term shall be as set forth below. Tenant shall provide Landlord with written notice of its intent to renew this Lease at least nine (9) months prior to the Expiration Date of the Lease Term or Renewal Term, as applicable; otherwise, Tenant shall forfeit its right to renew the Lease Term and this Lease shall terminate at the conclusion of the Lease Term or Renewal Term if applicable, unless otherwise agreed to by Landlord in writing. Rent during the Renewal Terms shall be as follows:

> First Renewal Term (Years 6 – 10)
> Year 6          $23,185.49
> Year 7          $23,881.05
> Year 8          $24,597.48
> Year 9          $25,335.40
> Year 10        $26,095.46
>
> Second Renewal Term (Years 11-15)
> Year 11        $26,878.32
> Year 12        $27,684.67
> Year 13        $28,515.21
> Year 14        $29,370.67
> Year 15        $30,251.79

> (k)     "Option to Purchase": Provided Tenant is not in default of its obligations under this Lease, Tenant shall have the option to purchase the Complex after the expiration of the initial five (5) year Lease Term upon terms and conditions contained in this paragraph at the then current market price as determined by Landlord.  Such option to purchase the Complex shall be exercisable by Tenant, if at all, by giving written notice of the exercise of such option (the "Purchase Option Notice") at least nine (9) months prior to the Expiration Date of the initial Lease Term (time is of the essence); otherwise, Tenant shall forfeit its purchase option unless otherwise agreed to by Landlord in writing.  If Tenant does not deliver the Purchase Option Notice to Landlord at least nine (9) months prior to the Expiration Date of the initial Lease Term during the Lease Term, then Tenant shall be deemed to have elected not to exercise such option. Tenant may not assign any of its rights under this paragraph without Landlord's prior written consent, in its sole discretion.  If the parties have not reached an agreement as to the purchase and sale of the Complex and entered into a purchase and sale agreement prior to the Expiration Date, despite their good faith efforts, Tenant's purchase option shall terminate and be of no further force or effect. Notwithstanding any provision contained herein to the contrary, Landlord shall have the right to sell the Premises, Buildings, and/or Complex, or any portion thereof (the "Subject Property") to a third party during the Term; provided, however, Tenant shall have the right of first refusal to purchase said Subject Property on the same terms and conditions being offered to said third party. Accordingly, at the time a third party expresses interest in the Subject Property, Tenant will be given the opportunity to purchase the Subject Property on the same terms and conditions as the third party's accepted offer. Landlord shall notify Tenant in writing of such offer and Tenant shall reply in writing within 20 days, either exercising or foregoing such right of first refusal for said Subject Property. Tenant's right of first refusal shall terminate and be of no further force or effect if Tenant fails to exercise such right of first refusal within said 20 days and Landlord shall thereafter be entitled to sell the Subject Property to such third party. In the event Tenant elects to exercise either its Option to Purchase or its Right of First Refusal herein, fifty (50%) of all rent paid by Tenant, including fifty percent (50%) of the actual costs of capital improvements made to the Complex to the extent allowed under this Lease, including Section 16 of this Lease, and subject to Landlord's prior approval, such approval not to be unreasonably withheld or conditioned, up to the date of the Close of Escrow, shall be credited by Landlord toward the Purchase Price of the Property. Notwithstanding any provision contained herein to the contrary, Tenant's Option to Purchase shall expire at the end of the earlier of the Expiration Date of initial five (5) year Term.

> 2.     **Lease and Demise.**  Subject to the terms and conditions hereinafter set forth, and each in consideration of the duties, covenants, and obligations of the other hereunder, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Premises.

Copy from re:SearchTX

3.      <u>Term.</u> (a) Subject to the terms and conditions set forth herein, this Lease shall continue in force for the Lease Term.

(b) If the Premises are not ready for occupancy by Tenant on the Commencement Date, Landlord shall not be liable for any costs, claims, damages, or liabilities incurred by Tenant as a result thereof, and the Lease Term and the obligations of Tenant hereunder shall nonetheless commence and continue in full force and effect; provided, however, if the Premises are not ready for occupancy on the Commencement Date due to omission, delay, or default on the part of Landlord, the Lease Term shall not commence until the Premises are ready for occupancy by Tenant. In such event, the Commencement Date shall be deemed to be postponed to the date the Premises are ready for occupancy, whereupon the Lease Term shall commence. Such postponement of rent and of the Commencement Date of this Lease shall constitute full settlement of all claims that Tenant might otherwise have against Landlord by reason of the Premises not being ready for occupancy by Tenant on the stated Commencement Date. Should the Lease Term commence on a date other than that specified in Paragraph 1(d) above, Landlord will send Tenant a written statement of such adjusted Commencement Date, and Tenant will, if Landlord requests, confirm such adjusted date in writing. The Premises shall be deemed to be ready for occupancy on the first to occur of (i) the date this Lease is fully executed, or (ii) the date on which Tenant begins occupancy of the Premises.

4.      <u>Use.</u> The Premises are to be used and occupied by Tenant solely as a residential treatment center for housing and rehabilitation of children in state conservatorship and the programs and services related thereto, and for no other purpose or use without the prior written consent of Landlord. Tenant shall not use the Premises or permit the Premises to be used for any purpose other than the foregoing. Tenant accepts the Premises subject to all local, state and federal laws, codes, regulations and ordinances (collectively, "Laws"). Landlord makes no representation or warranty that the Premises are now or in the future will be suitable for Tenant's use. Tenant has made its own investigation regarding all applicable Laws, including but not limited to zoning. Notwithstanding any provision contained herein to the contrary, the use of the Complex is further defined on the Facility Use Summary attached hereto as <u>Exhibit D.</u>

The Base Rental includes Tenant's right to use those items listed on <u>Exhibit D</u> under the heading "Includes", which includes without limitation, (i) office furniture, (ii) residential furniture, (iii) kitchen equipment, (iv) security system/cameras, (v) gym equipment, and (vi) a golf cart (collectively, the "Facility Items"), at Tenant's sole cost and risk, with insurance to be maintained by Tenant as stipulated in Tenant's Insurance section of this Lease. During the Lease Term, at Tenant's sole cost and expense, Tenant shall repair, maintain and make all necessary replacements to any parts and/or equipment of the Facility Items subject to reasonable wear and tear. Notwithstanding any provision contained herein to the contrary, Landlord shall retain ownership of the Facility Items. **LANDLORD MAKES NO REPRESENTATION OR WARRANTY REGARDING THE CONDITION OF OR TITLE TO THE FACILITY ITEMS. LANDLORD SHALL HAVE NO OBLIGATION TO MAINTAIN, REPAIR THE FACILITY ITEMS OR REPLACE ANY PARTS OR EQUIPMENT IN CONNECTION WITH THE FACILITY ITEMS. TENANT ACCEPTS THE USE OF THE FACILITY ITEMS ON AN "AS IS" BASIS WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR TITLE).**

5.      <u>Base Rental; Security Deposit: Late Charge: Landlord Expenses.</u>

(a)      <u>Base Rental.</u> Tenant hereby agrees to pay to Landlord, without any set off or deduction whatsoever, the Base Rental. Tenant shall also pay, as additional rent, all other sums of money that become due and payable by Tenant to Landlord under this Lease (Base Rental, Landlord Expenses and all other sums of money due and payable by Tenant to Landlord under this Lease are sometimes hereinafter collectively called "rent"). The obligations of Tenant to pay rent and the obligations of Landlord under this Lease are independent obligations. Tenant shall also pay with each Base Rental payment the amount of any transaction privilege, sales, or similar taxes incurred by Landlord on the rent transactions. The annual Base Rental shall be due and payable in advance in twelve (12) equal installments on the first (1st) day of each calendar month during the term of this Lease and any extensions or renewals thereof, and Tenant hereby agrees to pay rent to Landlord at Landlord's address provided herein (or such other address as may be designated by Landlord in writing from time to time) monthly, in advance, and without demand. If the term of this Lease commences on a day other than the first (1st) day of a month, then the first installment of rent shall be prorated, based on thirty (30) days per month, and such installment so prorated shall be paid in advance.

(b)      <u>Security Deposit.</u> Upon the execution of this Lease, Tenant agrees to pay to Landlord the Security Deposit, to be held by Landlord as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of rental or measure of Landlord's damages in case of default by Tenant. Upon default by Tenant, Landlord, from time to time, without prejudice

Lease Agreement – Page 3

Copy from re:SearchTX



**EXHIBIT A**

to any other remedy, may (but shall not be required to) apply the Security Deposit against any arrearages of Base Rental, or other rent, or any other damage, injury, expense or liability caused to Landlord by such default on the part of Tenant. Should all or any portion of the Security Deposit be used for the purposes described above during the Lease Term, then Tenant shall remit to Landlord on the first day of the month following notice of such use the amount necessary to restore the Security Deposit to its original balance. Tenant's failure to restore the Security Deposit upon notice from Landlord shall be a material breach of this Lease. No interest shall be payable on the Security Deposit and Landlord shall have no obligation to keep the security deposit separate from its general funds unless otherwise required by applicable law.

(c)     <u>Late Charge</u>. If Tenant fails to pay any regular monthly installment of rent by the fifth (5th) day of the month in which the installment is due, or any other amount constituting rent within ten (10) days after accrual thereof or billing therefor, there shall be added to such unpaid amount a late charge of five percent (5%) of the installment or amount due in order to compensate Landlord for the extra administrative expenses incurred.

(d)     <u>Landlord's Expenses</u>. No later than April 1 each year during the Lease Term Landlord shall deliver to Tenant a statement of Landlord's Expense amount which shall include the following expenses. Tenant shall pay Landlord's Expenses within thirty (30) days after receipt of such statement. Landlord's Expenses shall include: if applicable, all taxes, assessments, and other governmental charges, whether federal, state, county or municipal (other than federal taxes on Landlord's net income and Landlord's franchise taxes), and whether they be by taxing districts or authorities presently taxing the Complex or by others, subsequently created or otherwise, and any other taxes and assessments attributable to the Complex or its operation. It is agreed that Tenant will be responsible for ad valorem taxes on its personal property and on the value of leasehold improvements to the extent that the same exceed standard building allowances.

6.     <u>Net Lease</u>. It is the intention of the parties hereto that this Lease is an "absolute net lease" and that Tenant is to do all things and make all payments connected with or arising out of its occupation, usage, and/or tenancy of the Premises, including but not limited to, all costs and expenses for repairs, maintenance and replacement to the roof and other parts of the Premises, Buildings and Complex, costs and expenses for the HVAC systems as well as all other systems and Buildings' equipment, capital improvements, maintenance and upkeep of the Premises, Buildings, Complex, and common areas, the land upon which the Complex is situated, and all other expenses, costs and obligations of every kind and nature whatsoever relating to Premises. Landlord is not and shall not be required to render any services of any kind to Tenant nor to maintain, repair, replace, rebuild or restore any portion of the Premises, Buildings, Complex, common areas, the improvements, or any part thereof; however, Landlord shall have the right, without any obligation whatsoever, to pay any utility or other charges levied against the Premises and any other debts incurred by Tenant with respect to the Premises or the use or occupation of the Premises which Tenant shall fail to pay when due, and to make repairs, if Tenant shall fail to do so, and/or to maintain the Complex subject to reimbursement of Basic Costs.

7.     <u>Acceptance of Premises and Buildings By Tenant</u>.   The taking of possession of the Premises by Tenant shall be conclusive evidence (a) that Tenant accepts the Premises as suitable for the purposes for which the same are leased, and (b) that Tenant accepts the Buildings and each and every part and appurtenance thereof as being in a good and satisfactory condition. **Tenant hereby covenants and agrees that Tenant is familiar with the condition of the Premises, Buildings, and Complex and that Tenant is accepting the Premises, Buildings, and Complex on an "AS-IS," "WHERE-IS" basis, and except for Landlord's Work (hereinafter defined) and as otherwise set forth in this Lease, Landlord is making absolutely no repairs, replacements or improvements of any kind or nature to the Premises, Buildings, or Complex in connection with, or in consideration of, this Lease,** Landlord shall perform the following work and/or improvements within thirty (30) days of the execution of this Lease: (i) replace roofs on Building #2 – RTC 1; #3 – Office; #4 – Gym; #5 – Cafeteria; #6 – Alternate Home; and #8 – RTC 2, and (ii) replace three (3) HVAC units servicing the Premises (collectively, "Landlord's Work").

8.     <u>Services and Utilities</u>. During the Lease Term, Tenant shall be responsible for all costs and charges for water, gas, electricity, sewer, garbage, janitorial, pest control, yard maintenance and landscaping, snow and ice removal, and any and all other services and utilities used by Tenant in connection with the Premises, Buildings, and/or Complex. Tenant shall place all utilities in its name during the Term of this Lease. Any cessation, malfunction, fluctuation, variation, or interruption thereof, or any breakdown or malfunction of any utility, service or equipment serving the Premises, Buildings, and/or Complex shall not render Landlord liable in any respect for damages, direct or consequential, to either persons or property, nor be construed as an eviction of Tenant, nor work an abatement of rent, nor relieve Tenant from the obligation to fulfill any covenant or agreement hereof. Should any of Tenant's office equipment or machinery breakdown, be damaged, or for any cause cease to function properly as a result of the cessation, malfunction, fluctuation, variation, interruption, or breakdown of services or equipment in the Premises, Buildings, and/or Complex, Tenant shall have no claim for rebate of rent or damages.

Lease Agreement – Page 4

Copy from re:SearchTX

EXHIBIT A

9.   Keys and Locks.  Landlord shall furnish Tenant a building standard number of keys. Upon termination of this Lease, Tenant shall surrender to Landlord all keys to the Premises and give to Landlord the explanation of the combination of all locks for safes, safe cabinets, and vault doors, if any, in the Premises.

10.   Signage.  Tenant shall have the right, at its sole cost and expense, to install and maintain signage consistent with the signage currently existing; provided, however, that the specifications for such signage (including, without limitation, the exact size and proposed location thereof) shall be submitted to Landlord for approval prior to the installation thereof, which approval shall not be unreasonably withheld, and said signage shall be subject to all applicable laws, codes, restrictions, and ordinances. Landlord's approval of Tenant's proposed signage shall not constitute a representation or warranty by Landlord that such signage complies with applicable laws, codes, restrictions or ordinances, and compliance therewith shall remain Tenant's sole responsibility.  At or before the Expiration Date, or the date of any earlier termination of this Lease, Tenant shall remove such signage and repair any damage to the Premises, Buildings, and/or Complex resulting from Tenant's installation or removal thereof, restoring the exterior of the Premises, Buildings, and/or Complex where the signage was located to the condition existing as of the Commencement Date.

11.   Maintenance and Repairs by Landlord.  Unless otherwise stipulated herein, Landlord shall not be required to make any improvements, maintenance, repairs or replacements of any kind or character on the Premises, Buildings, Complex and/or common areas during the Lease Term.  Landlord represents that the plumbing, heating and electrical systems servicing the Buildings are in good working order as of the Commencement.

12.   Maintenance and Repairs by Tenant.  Tenant, at its sole cost and expense, throughout the Lease Term, shall take good care of the Premises, Buildings, Complex, and common areas and shall keep the same in good, safe, working order, condition and repair, and shall make and perform all routine maintenance thereof, including janitorial maintenance, pest control, ice removal, and all necessary repairs, ordinary and extraordinary, foreseen and unforeseen, of every nature, kind and description, including but not limited to the interior and exterior structure of the Buildings, including without limitation, the roof, exterior walls, bearing walls, support beams, foundation, columns, exterior doors and windows; the mechanical, electrical, and plumbing systems and components serving the Premises, Buildings and Complex, including but not limited to the heating, ventilating, and air conditioning systems; interior walls, ceilings, floors, and floor coverings (including carpet and tiles) of the Premises, Buildings, Complex and common areas; and the exterior improvements to the land, including without limitation, ditches, shrubbery, landscaping, and fencing,  As used herein, "repairs" shall include all necessary replacements, restorations, renewals, alterations, additions and betterments to the Premises. All repairs made by Tenant shall be at least the quality and cost of the original work and shall be made by Tenant in accordance with all laws, ordinances and regulations whether heretofore and hereafter enacted. The necessity for or adequacy of maintenance and repairs shall be measured by the standards which are appropriate for improvements of similar construction and class, provided that Tenant shall in any event make all repairs necessary to avoid any damage or injury to the improvements. Throughout the Lease Term, Tenant will maintain a maintenance contract for servicing of the HVAC systems with a servicer reasonably acceptable to Landlord and, if it is determined that Tenant has not maintained the Premises, Buildings and Complex as herein required, Tenant will reimburse Landlord for the cost of repairing the Premises and for the fees and expenses of such engineer or consultant within thirty (30) days after Landlord's demand. Tenant will cooperate with the engineer or consultant in its performance of such review and inspection. If Tenant fails to make such repairs or replacements promptly, Landlord may, at its option, make the repairs or replacements, and Tenant shall pay the cost thereof to Landlord on demand. The repairs required to be made by Tenant to the mechanical, electrical, sanitary, heating, ventilating, air conditioning or other systems of the Buildings shall be performed only by contractor(s) designated (or approved) by Landlord and only upon the prior written approval of Landlord as to the work to be performed and materials to be furnished in connection therewith.

13.   Care of Premises.  Tenant shall not to commit or allow any waste or damage to be committed on any portion of the Premises, and at the termination of this Lease, by lapse of time or otherwise, to deliver up the Premises to Landlord in as good a condition as at the Commencement Date, ordinary wear and tear excepted.  Upon any termination of this Lease, Landlord shall have the right to reenter and resume possession of the Premises.

14.   Peaceful Enjoyment.  Tenant shall be entitled to hold and enjoy the Premises subject to the terms hereof, provided that Tenant timely pays the rent and other sums herein required to be paid by Tenant and timely performs all of Tenant's covenants and agreements herein contained.  This covenant and any and all other covenants and agreements of Landlord contained in the Lease shall be binding upon Landlord and its successors only with respect to breaches occurring during its or their respective periods of ownership of Landlord's interest hereunder.

Lease Agreement – Page 5

Copy from re:SearchTX

15.  Holding Over  No holding over by Tenant after the expiration of the Lease Term shall be construed to extend the Lease Term; and in the event of any unauthorized holding over, Tenant shall indemnify, defend and hold Landlord harmless from and against all claims for damages (and reimburse Landlord upon demand for any sums paid in settlement of any such claims) by any other Tenant or prospective Tenant to whom Landlord may have leased all or any part of the Premises effective before or after the expiration of the Lease Term and by any broker claiming any commission or fee in respect of any such lease or offer to lease.  Any holding over with the written consent of Landlord shall thereafter constitute this Lease a lease from month to month under the terms and provisions of this Lease, to the extent applicable to a tenancy from month to month, with a Base Rental of one hundred twenty-five percent (125%) of the amount payable at the end of the Lease Term.

16.  Alterations, Additions, and Improvements.  Tenant shall not make or allow to be made any alterations, additions or improvements in or to the Premises or place signs on the Premises which are visible from outside the Premises, without first obtaining the written consent of Landlord in each such instance.  Any and all alterations, additions, and/or improvements, including the Leasehold Improvements, when made to the Premises by Tenant, shall at once become the property of Landlord and shall be surrendered to Landlord upon termination of this Lease by lapse of time or otherwise; provided, however, this clause shall not apply to trade fixtures, movable equipment, or furniture owned by Tenant, which, if Tenant is not in default, may be (or if requested by Landlord, shall be) removed by Tenant upon termination of this Lease. Tenant agrees specifically that no food, soft drink or other vending machine will be installed within the Premises.

17.  Legal Use and Violations of Insurance.  Tenant shall not occupy or use, or permit any portion of the Premises to be occupied or used, for any business or purpose that is unlawful, disreputable or extra-hazardous on account of fire, or permit anything to be done that could in any way increase the rate or result in the denial or reduction of fire, liability or any other insurance coverage on the Complex and/or its contents.  Upon notice, if by reason of Tenant's acts or conduct of business, there shall be an increase in the rate of insurance on the Buildings or the Buildings' contents, then Tenant shall pay such increase to Landlord immediately upon demand as Landlord's Expense.

18.  Laws and Regulations; Building Rules.  Tenant shall comply with all laws, ordinances, rules and regulations of any state, federal, municipal, or other government or governmental agency having jurisdiction of the Premises that relate to the use, condition or occupancy of the Premises and the conduct of Tenant's business thereon.  Tenant will comply with the rules of the Complex adopted and altered by Landlord from time to time for the safety, care, and cleanliness of the Premises and Complex and for the preservation of good order therein, all changes to which will be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant.

19.  Nuisance.  Tenant shall conduct its business and control its agents, employees, invitees, and visitors in such manner as not to create any nuisance, or interfere with, annoy, or disturb any other tenant or Landlord in its operation of the Complex.

20.  Entry by Landlord.  With 24-hour notice, Tenant shall permit Landlord or its agents or representatives to enter any part of the Premises at all reasonable hours (and in emergencies at all times and without notice) to inspect the same, or to show the Premises to prospective tenants, purchasers, mortgagees, or insurers, to clean or make repairs, alterations, or additions thereto, as Landlord may deem necessary or desirable.  Tenant shall not be entitled to any abatement or reduction of rent by reason of such entry.

21.  Assignment and Subletting.  (a) Tenant shall not, without the prior written consent of Landlord, (i) assign or in any manner transfer this Lease or any estate or interest therein, or (ii) permit any assignment of this Lease or any estate or interest therein by operation of law, or (iii) sublease the Premises or any part thereof, or (iv) grant any license, concession, or other right of occupancy of any portion of the Premises, or (v) permit the use of the Premises by any parties other than Tenant, its agents and employees.  For purposes hereof, the merger or consolidation of Tenant with or into any other corporation or other entity, a sale or other transfer of fifty percent (50%) or more of Tenant's capital stock or other analogous ownership interest, or a sale or other transfer of fifty percent (50%) or more of Tenant's assets shall be deemed an assignment of this Lease.  Consent by Landlord to one or more assignments or sublettings shall not operate as a waiver of Landlord's rights as to any subsequent assignments and sublettings.  Notwithstanding any assignment or subletting consented to by Landlord, Tenant and any guarantor of Tenant's obligations under this Lease shall at all times remain fully responsible and liable for the payment of the rent herein specified and for compliance with all of Tenant's other obligations under this Lease.  If any event of default should occur while the Premises or any part thereof are then assigned or sublet, Landlord, in addition to any other remedies herein provided or provided by law, may at its option collect directly from such assignee or subtenant all rents becoming due to Tenant under such assignment or sublease, and apply such rent against any sums due to Landlord by Tenant hereunder, and Tenant hereby directs any such assignee or subtenant to make such payments of rent directly to Landlord upon receipt of notice from Landlord.  No direct collection by Landlord from any such assignee or subtenant shall

Lease Agreement – Page 6

Copy from re:SearchTX

be construed to constitute a novation or a release of Tenant or any guarantor of Tenant from the further performance of its obligations hereunder. Receipt by Landlord of rent from any assignee, subtenant or occupant of the Premises shall not be deemed a waiver of the covenant contained in this Lease against assignment and subletting or a release of Tenant from any obligation under this Lease. The receipt by Landlord to any such assignee or subtenant obligated to make payments of rent shall be a full and complete release, discharge, and acquittance to such assignee or subtenant to the extent of any such amount of rent so paid to Landlord. Landlord is authorized and empowered, on behalf of Tenant, to endorse the name of Tenant upon any check, draft, or other instrument payable to Tenant evidencing payment of rent, or any part thereof, and to apply the proceeds therefrom in accordance with the terms hereof. Tenant shall not mortgage, pledge, or otherwise encumber its interest in this Lease or in the Premises. **Any attempted assignment or sublease by Tenant in violation of the terms and covenants of this paragraph shall be void and constitute an event of default under this Lease.**

(b)     If Tenant requests Landlord's consent to an assignment of the Lease or subletting of all or a part of the Premises, Tenant shall submit to Landlord in writing, at least sixty (60) days in advance of the date on which Tenant desires to make such an assignment or sublease, notice of the name of the proposed assignee or subtenant and the proposed commencement date of such assignment or subletting, together with copies of all agreements entered into or contemplated to be entered into regarding such subletting or assignment, and such information as Landlord may request regarding the nature and character of the business of the proposed assignee or subtenant. Landlord shall have the option (to be exercised within thirty (30) days from Landlord's receipt of Tenant's submission of written request), (i) to permit Tenant to assign or sublet such space to the proposed assignee or subtenant (in which event Tenant shall deliver to Landlord fully-executed legible, correct and complete copies of all agreements relating to such assignment or subletting); if, however, the rental or other consideration payable in respect of such subletting or assignment exceeds the rent payable hereunder by Tenant, then all such excess rent and other consideration shall be deemed additional rent owed by Tenant to Landlord, and shall be payable to Landlord by Tenant in the same manner and on the same terms as installments of Base Rental are payable by Tenant hereunder (or upon Tenant's receipt thereof, whichever is earlier); or (ii) to refuse to consent to Tenant's assignment or subleasing of such space and to continue this Lease in full force and effect as to the entire Premises; or (iii) to cancel this Lease (or the applicable portion thereof as to a partial subletting) as of the commencement date stated in the above-mentioned notice from Tenant of its desire to enter into such subletting or assignment, in which event the term of this Lease, and the tenancy and occupancy of the Premises (or the applicable portion thereof as to a partial subletting) by Tenant thereunder, shall terminate as if the cancellation date was the original termination date of this Lease. If Landlord should fail to notify Tenant in writing of such election within such thirty (30) day period, Landlord shall be deemed to have elected option (ii) above. If Landlord elects to exercise option (i) above, Tenant agrees to provide, at its expense and at a location approved by Landlord, direct access from such sublet space to a public corridor of the Building. Notwithstanding Landlord's consent to any assignment or subletting, no further or subsequent assignment or subletting shall be permitted unless Landlord consents in writing thereto.

22.     Transfers by Landlord. Landlord shall have the right to transfer and assign, in whole or in part, all its rights and obligations hereunder and in the Complex and other property referred to herein, subject to Tenant's Right of First Refusal and in such event and upon such transfer ("any such transferee to have the benefit of, and be subject to, the rights and obligations of Landlord hereunder), Landlord shall be released from any further obligations hereunder, and Tenant agrees to look solely to such successor in interest of Landlord for the performance of such obligations.

23.     Subordination to Mortgage. This Lease is subject and subordinate to any mortgage or deed of trust that may now or hereafter encumber the Complex, and to all renewals, modifications, consolidations, replacements, and extensions thereof. This clause shall be self-operative and no further instrument of subordination need be required by any mortgagee or beneficiary; provided that any such mortgagee or beneficiary may unilaterally, and without any consent from Tenant, elect to make this Lease superior to such mortgage or deed of trust by written instrument delivered to Tenant. In confirmation of such subordination, however, Tenant shall, within five (5) days after Landlord's request, execute any agreement, certificate and/or instrument evidencing such subordination that Landlord may request. In the event of the enforcement by the mortgagee or beneficiary under any such mortgage or deed of trust of the remedies provided for by law or by such mortgage or deed of trust, Tenant will, at the option of any person or party succeeding to the interest of Landlord as a result of such enforcement, automatically become the Tenant of such successor in interest without change in the terms or other provisions of this Lease; provided, however, that such successor in interest shall not be bound by (a) any payment of rent or additional rent for more than one (1) month in advance, except advance rental payments expressly provided for in this Lease unless Landlord and Tenant otherwise agree in writing; (b) any modification of this Lease made without the written consent of such mortgagee or beneficiary or such successor in interest; (c) liable for any act or omission of Landlord; or (d) subject to any offset or defense arising prior to the date such successor in interest acquired title to the Buildings. Upon request by any mortgagee or beneficiary, Tenant shall execute and deliver an instrument or instruments confirming the attornment provided for herein.

Lease Agreement – Page 7

Copy from re:SearchTX

24.  Mechanic's Lien.  Tenant shall not permit any mechanic's lien or liens to be placed upon the Premises, the Leasehold Improvements thereon or the Complex during the term hereof caused by or resulting from any work performed, materials furnished, or obligation incurred by or at the request of Tenant, and nothing contained in this Lease shall be deemed as constituting the consent or request of Landlord, express or implied, to any contractor, subcontractor, laborer, or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration, or repair to the Premises, or any part thereof, nor as giving Tenant any authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any mechanic's or other liens against the interest of Landlord in the Premises.  If a lien is filed upon the interest of Landlord or Tenant in the Premises, Tenant shall cause the same to be discharged of record within ten (10) days after the filing of same. If Tenant shall fail to discharge such mechanic's lien within such period, then, in addition to any other right or remedy of Landlord, Landlord may discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by deposit in court or bonding.  Any amount paid by Landlord for any of the aforesaid purposes, or for the satisfaction of any other lien not caused by Landlord, with interest thereon at the rate of the lesser of: (i) 18% annual percentage rate, or (ii) maximum rate allowed by law from the date of payment, shall be paid by Tenant to Landlord immediately on demand as rent.

25.  Estoppel Certificate.  Tenant will, at any time and from time to time, within three (3) days from any written request by Landlord, execute, acknowledge, and deliver to Landlord a statement in writing executed by Tenant certifying to Landlord and/or any party designated by Landlord that Tenant is in possession of the Premises under the terms of this Lease, that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, and setting forth such modifications), the dates to which the rent has been paid, that to the knowledge of Tenant no default exists hereunder or specifying each such default of which Tenant may have knowledge, and such other matters as may be reasonably requested by Landlord.  Any such statement by Tenant may be relied upon by any prospective purchaser or mortgagee of the Complex.

26.  Events of Default.  (a) The following events shall be events of default by Tenant under this Lease:

      (i)  Landlord fails to receive when due any installment of rent or other sum of money payable by Tenant hereunder or under any other agreement between Landlord and Tenant.

      (ii)  Tenant shall fail or refuse to comply with any term, provision, or covenant of this Lease, other than the payment of rent, or any term, provision, or covenant of any other agreement between Landlord and Tenant, and shall not cure such failure or refusal within thirty (30) days after written notice thereof from Landlord to Tenant.  Provided however, in the event the cure cannot be completed within thirty days, Tenant must provide Landlord with corrective action plan to cure the default, commence implementation within thirty (30) days after written notice thereof from Landlord to Tenant, and diligently pursue timely completion of the corrective action plan, subject to a maximum of ninety (90) days to cure.

      (iii)  Tenant or any guarantor of Tenant's obligations hereunder (hereinafter called "Guarantor") shall become insolvent, make a transfer in fraud of creditors, make a general assignment for the benefit of creditors, or admit in writing its inability to pay its debts as they become due.

      (iv)  Tenant or any Guarantor shall file a petition under any section or chapter of the Federal Bankruptcy Code, as amended from time to time, or under any similar law or statute or the United States or any State thereof, or an order for relief shall be entered against Tenant or any Guarantor in any bankruptcy or insolvency proceedings, or a petition or answer proposing the entry of an order for relief against Tenant or any Guarantor in a bankruptcy or its reorganization proceedings under any present or future federal or state bankruptcy or similar law shall be filed in any court and not discharged or denied within twenty (20) days after its filing.

      (v)  A receiver, trustee or custodian shall be appointed for all or substantially all of the assets of Tenant or any Guarantor or of the Premises or any of Tenant's property located therein in any proceeding brought by Tenant or any Guarantor, or any such receiver, trustee or custodian shall be appointed in any proceeding brought against Tenant or any Guarantor and shall not be discharged within twenty (20) days after such appointment, or Tenant or such Guarantor shall consent to or acquiesce in such appointment.

      (vi)  Tenant's leasehold interest hereunder shall be taken in execution or other process of law in any action against Tenant.

Copy from re:SearchTX



**EXHIBIT A**

(vii)    Tenant shall cease to conduct its business in the Premises or shall vacate, abandon or desert any substantial portion of the Premises, whether or not rent continues to be paid; provided that Tenant shall be deemed to have vacated or abandoned the Premises if Tenant fails for any reason to use one hundred percent (100%) of the Premises for a permitted use for a period of any thirty (30) consecutive days without Landlord's prior written consent, which shall not be unreasonably withheld.

(viii)    Tenant shall fail or refuse to move into or take possession of the Premises within fifteen (15) days after the Commencement Date.

(b)    If an event of default occurs, Landlord shall have the right to pursue any one or more of the following remedies in addition to all other rights or remedies provided herein or at law or in equity:

(i)    Landlord may terminate this Lease or, to the extent permitted by law, without terminating this Lease, terminate Tenant's right of possession and forthwith repossess the Premises by forcible entry and detainer suit or otherwise without liability for trespass or conversion and be entitled to recover as damages a sum of money equal to the total of (a) the cost of recovering the Premises, (B) the unpaid rent due and payable at the time of termination, plus interest thereon at the rate hereinafter specified from the due date, (C) the balance of the rent for the remainder of the term less the fair market value of the Premises for such period, and (D) any other sum of money and damages owed by Tenant to Landlord.

(ii)    To the extent permitted by law, Landlord may terminate Tenant's right of possession and may repossess the premises by forcible entry or detainer suit or otherwise without liability for trespass or conversion, and without terminating this Lease, in which event Landlord may, but shall be under no obligation to, relet the same for the account of Tenant for such rent and upon such terms as shall be satisfactory to Landlord. For the purpose of such reletting, Landlord is authorized to decorate or to make any repairs, changes, alterations, or additions in or to the Premises that may be necessary or convenient. If Landlord exercises the remedies provided in this subparagraph, Tenant shall pay to Landlord, and Landlord shall be entitled to recover from Tenant, an amount equal to the total of the following: (a) unpaid rent, plus interest at the rate hereinafter provided, owing under this Lease the for all periods of time that the Premises are not relet; plus (B) the cost of recovering possession, and all of the costs and expenses of such decorations, repairs, changes, alterations, and additions, and the expense of such reletting and of the collection of the rent accruing therefrom to satisfy the rent provided for in this Lease to be paid; plus (C) any deficiency in the rentals and other sums actually received by Landlord from any such reletting from the rent and additional rent required to be paid under this Lease with respect to the periods the Premises are so relet, and Tenant shall satisfy and pay any such deficiency upon demand therefor from time to time. Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this subparagraph from time to time; and that no delivery or recovery of any portion due Landlord hereunder shall be a defense in any action to recover any amount not theretofore reduced to judgment in favor of Landlord, nor shall such reletting be construed as an election on the part of Landlord to terminate this Lease unless a written notice of such intention be given to Tenant by Landlord. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous default.

(iii)    Offset against any rents, damages, or other sums of money owed by Tenant any security deposit and/or any advance rent applicable to any time period after the occurrence of the default and any sums which would then or thereafter otherwise be due from Landlord to Tenant.

(iv)    Landlord may alter locks and other security devices at the Premises and prevent Tenant from entering the Premises, in accordance with Section 93.002 of the Texas Property Code, as amended from time to time.

27.    <u>Lien for Rent</u>. To the extent permitted by law, Tenant hereby grants to Landlord a lien and security interest on all property of Tenant now or hereafter placed in or upon the Premises, and such property shall be and remain subject to such lien and security interest of Landlord for payment of all rent hereunder.

28.    <u>Attorneys' Fees</u>. If Tenant defaults in the performance of any terms, covenants, agreements, or conditions contained in this Lease and Landlord places the enforcement of this Lease or the collection of any rent due or to become due hereunder, or recovery of the possession of the Premises in the hands of an attorney, or files suit upon the same, Tenant agrees to pay Landlord's reasonable attorneys' fees. In addition, if Tenant requests any consent or other action on the part of

Lease Agreement – Page 9

Copy from re:SearchTX

Landlord, in connection with which Landlord deems it necessary for any documents to be prepared or reviewed by its counsel, Tenant shall pay all reasonable attorneys' fees and expenses incurred by Landlord in such connection.

29.   <u>No Implied Waiver.</u>  The failure of Landlord to insist at any time upon the strict performance of any covenant or agreement or to exercise any option, right, power, or remedy contained in this Lease shall not be construed as a waiver or a relinquishment thereof for the future. The waiver of or redress for any violation of any term, covenant, agreement, or condition contained in this Lease shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. No express waiver shall affect any condition other than the one specified in such waiver and that one only for the time and in the manner specifically stated.  A receipt by Landlord of any rent with knowledge of the breach of any covenant or agreement contained in this Lease shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision of this Lease shall be deemed to have been made unless expressed in writing and signed by Landlord.   No payment by Tenant or receipt by Landlord of a lesser amount than the monthly installment of rent due under this Lease shall be deemed to be other than on account of the earliest rent due hereunder, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

30.   <u>Intentionally Omitted</u>

31.   <u>Tenant's Insurance Requirements.</u>  See <u>Exhibit E</u> for Insurance Requirements, and <u>Schedule F</u> for specific property insurance limits required of Tenant, attached hereto and made a part hereof for all purposes.

Tenant agrees to provide full and exact copies of all insurance policies, current and as renewed, required under this lease agreement.

Tenant shall be responsible for paying all deductibles required under its insurance policies.

Tenant shall be responsible for insuring its business personal property, loss of income including rental payments to Landlord for a minimum of twelve months, and equipment, including without limitation, removable trade fixtures, and furniture located in the Premises, Buildings, and/or Complex.

Notwithstanding any provision contained herein to the contrary, in the event there is a conflict between the terms and conditions of this Section 31 and the terms and conditions of <u>Exhibit E and/or Schedule F</u>, attached hereto, the terms and conditions of <u>Exhibit E and/or Schedule F</u> shall govern and control.

**32.   INDEMNITY.  LANDLORD SHALL NOT BE LIABLE TO TENANT, OR TO TENANT'S AGENTS, SERVANTS, EMPLOYEES, CUSTOMERS, OR INVITEES, FOR ANY CLAIMS, CAUSES OF ACTION, LOSSES, DAMAGES, EXPENSES, COURT COSTS OR ATTORNEY'S FEES ARISING FROM ANY DAMAGE TO PERSON OR PROPERTY CAUSED BY, ARISING OUT OF OR RELATED TO ANY ACT, OMISSION, OR NEGLECT OF TENANT, ITS AGENTS, SERVANTS, EMPLOYEES, CUSTOMERS, OR INVITEES, OR ANY BREACH OF ANY COVENANT OF TENANT UNDER THIS LEASE, AND TENANT AGREES TO INDEMNIFY AND HOLD LANDLORD HARMLESS FROM ALL LIABILITY AND FROM ALL CLAIMS FOR ANY SUCH DAMAGE. TENANT AGREES TO INDEMNIFY AND HOLD HARMLESS LANDLORD AND LANDLORD'S AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, PARTNERS, MEMBERS, AND SHAREHOLDERS FROM AND AGAINST ALL CLAIMS, OF WHATEVER NATURE, INCLUDING ATTORNEY'S FEES AND COURT COSTS, ARISING FROM TENANT'S OCCUPANCY OF THE LEASED PREMISES, INCLUDING ANY INTENTIONAL AND/OR NEGLIGENT ACT OR OMISSION ON THE PART OF TENANT, ITS CONTRACTORS, LICENSEES, AGENTS, OR ITS EMPLOYEES RESULTING IN OR ALLEGED TO HAVE RESULTED IN BODILY INJURY, DEATH, OR PROPERTY DAMAGE, INCLUDING LOSS OF USE, TO ANY PERSON OR TO THE PROPERTY OF ANY PERSON.  THE INDEMNITY SET FORTH IN THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS LEASE.**

**33.   WAIVER OF SUBROGATION RIGHTS.  NOTWITHSTANDING ANYTHING IN THIS LEASE TO THE CONTRARY, TENANT HEREBY WAIVES ALL RIGHTS OF RECOVERY, CLAIM, ACTION, OR CAUSE OF ACTION, AGAINST LANDLORD, ITS AGENTS, OFFICERS, OR EMPLOYEES, FOR ANY LOSS OR DAMAGE THAT MAY OCCUR TO THE PREMISES, ANY LEASEHOLD IMPROVEMENTS, OR THE COMPLEX OF WHICH THE PREMISES ARE A PART,  REGARDLESS OF CAUSE OR ORIGIN. TENANT HERETO AGREES TO GIVE IMMEDIATELY TO ANY INSURER THAT HAS ISSUED TO TENANT ANY**

Copy from re:SearchTX

**INSURANCE POLICY(IES) WRITTEN NOTICE OF THE WAIVER CONTAINED IN THIS PROVISION AND TO HAVE SUCH POLICIES ENDORSED, AS NECESSARY, TO EFFECT SUCH WAIVER. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS LEASE.**

34.     Casualty Damage.  If the Premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give prompt written notice thereof to Landlord.  If the Complex shall be so damaged by fire or other casualty that substantial alteration or reconstruction of the Complex shall, in Landlord's reasonable opinion, be required (whether or not the Premises shall have been damaged by such fire or other casualty), or if any mortgagee or beneficiary under a mortgage or deed of trust covering the Complex should require that the insurance proceeds payable as a result of said fire or other casualty be used to retire the mortgage debt, Landlord may, at its option, terminate this Lease and the term and estate hereby granted by notifying Tenant in writing of such termination within sixty (60) days after the date  such insurance proceeds are applied to such mortgage debt, in which event the all Rental and other obligations hereunder shall be abated as of the date of such damage.  If Landlord does not thus elect to terminate this Lease, Landlord shall within sixty (60) days after the date of such damage commence to repair and restore the Complex and shall proceed with reasonable diligence to restore the Complex (except that Landlord shall not be responsible for delays outside its control) to substantially the same condition in which it was immediately prior to the damage occurring, except that Landlord shall not be required to rebuild, repair, or replace any part of Tenant's furniture or furnishings or fixture and equipment removable by Tenant under the provisions of this Lease, but such work shall not exceed the scope of the work done by Landlord in originally constructing the Complex and installing building standard items in the Premises, nor shall Landlord in any event be required to spend for such work an amount in excess of the insurance proceeds actually received by Landlord as a result of the fire or other casualty.  Tenant agrees that promptly after completion of such work by Landlord, Tenant will proceed with reasonable diligence and at Tenant's sole cost and expense to restore, repair and replace all alterations, additions, improvements, fixtures and equipment installed by Tenant.  Landlord shall not be liable for any loss of revenues, inconvenience or annoyance to Tenant or injury to the business of Tenant, including loss of market share or reputation, resulting in any way from such damage or the repair thereof, except that, subject to the provisions of the next sentence, Landlord shall abate Tenant's rent during the time and to the extent the Premises are unfit for occupancy.  If the Premises or any other portion of the Complex be damaged by fire or other casualty resulting from the fault or negligence of Tenant or any of Tenant's agents, employees, or invitees, the rent hereunder shall not be abated during the repair of such damage, and Tenant shall be liable to Landlord for the cost and expense of the repair and restoration of the Complex caused thereby to the extent such cost and expense is not covered by insurance proceeds.  Any insurance which may be carried by Landlord or Tenant against loss or damage to the Complex or to the Premises shall be for the sole benefit of the party carrying such insurance and shall be under its sole control.  Tenant shall use proceeds from insurance carried by Tenant to repair and restore Tenant's property.

35.     Condemnation.  If the Premises shall be taken or condemned for public purpose to such extent as to render the Premises untenantable, this Lease shall, at the option of either party, cease and terminate as of the date of such taking or condemnation.  Either party may exercise such option to terminate by written notice to the other party within fifteen (15) days after such taking or condemnation.  All proceeds from any taking or condemnation of the Premises shall belong to and be paid to Landlord.  Upon termination pursuant to this paragraph, Tenant shall immediately vacate the Premises. Landlord shall provide Tenant prompt notice of any condemnation action.

36.     Damages from Certain Causes.  Landlord shall not be liable to Tenant for any delay or for any loss or damage to any property or person occasioned by theft, fire, act of God, public enemy, injunction, riot, strike, insurrection, war, court order, requisition, or order of government body or authority, or for any damage or inconvenience which may arise through repair or alteration of, or failure to repair, any part of the Complex or Premises necessitated by such causes. Tenant, to the fullest extent permitted under applicable law, hereby waives any claim or cause of action which may now exist or hereafter arise under any applicable deceptive trade practices law or consumer protection law or any successor statute.

37.     Notice and Cure.  In the event of any act or omission by Landlord that would give Tenant the right to damages from Landlord or the right to termination this Lease by reason of a constructive or actual eviction from all or part of the premises or otherwise, Tenant shall not sue for such damages or exercise any such right to terminate until it shall have given written notice of such act or omission to Landlord and to the holder(s) of the indebtedness or other obligations secured by any mortgage or deed of trust affecting the Premises, and a reasonable period of time for remedying such act or omission shall have elapsed following the giving of such notice, during which time Landlord and such holder(s), or either of the m, their agents or employees, shall be entitled to enter upon the Premises and do therein whatever may be necessary to remedy such act or omission.  During the period after the giving of such notice and during the remedying of such act or omission, the Base Rental payable by Tenant for such period as provided in this Lease shall be abated and apportioned only to the extent that any part of the Premises shall be untenantable. Provided however, this provision shall only be effective if Landlord has provided Tenant contact information for the holder of any mortgage or deed of trust affecting the Premises.

Lease Agreement – Page 11

Copy from re:SearchTX

**EXHIBIT A**

38.    Personal Liability.  The liability of Landlord, any, agent of Landlord, or any of their respective officers, directors, shareholders, or employees to Tenant for or in respect of any default by Landlord under the terms of this Lease or in respect of any other claim or cause of action shall be limited to the interest of Landlord in the Complex, and Tenant agrees to look solely to Landlord's interest in the Complex for the recovery and satisfaction of any judgment against Landlord, any agent of Landlord, or any of their respective officers, directors, shareholders, and employees.

39.    Notice.  Any notice, communication, request, reply or advice (hereinafter collectively called "notice") provided for in this Lease must be in writing, and shall, unless otherwise expressly provided in this Lease, be given or served by depositing the same in the United States mail, postpaid and certified and addressed to the party to be notified, with return receipt requested, or by delivering the same in person to an officer of such party, or by consigning the same to a recognized overnight delivery service operating on a nationwide basis, addressed to the party to be notified.  Notice deposited in the mail in the manner hereinabove described shall be effective, unless otherwise stated in this Lease, three (3) days after it is so deposited.  Notice given in any other manner shall be effective upon delivery.

All notices to be given to Landlord hereunder shall be given to Landlord at:

ARROW CHILD & FAMILY MINISTRIES
Attn: Paula Weger, CFO
2929 FM 2920 Road
Spring, TX 77388
Email: paula.weger@arrow.org

All notices to be given to Tenant hereunder shall be given to Tenant at:

RITE OF PASSAGE, INC.
Attn: Carolyn Jenkins-Bower, CFO
2560 Business Parkway, Suite A
Minden, NV 89423
Phone: (775) 267-9411
Email: cj.bower@rop.com

With a copy to:
Barbara J. Ross, Esq.
Barbara J. Ross PLC
PO Box 4973
Scottsdale, AZ 85251
Phone: (480) 839-8122
Email: Barbara.ross@rop.com

A party hereto may change its address by at least fifteen (15) days written notice to the other party delivered in compliance with this paragraph; provided, however, that no such notice shall be effective until actually received by the other party and provided further that during the Lease Term any notice to Tenant shall be deemed duly given if delivered to Tenant at the Premises.

40.    Captions.  The captions and headings appearing in this Lease are solely for convenience and shall not be given any effect in construing this Lease.

41.    Entirety and Amendments.  This Lease embodies the entire contract between the parties hereto, relative to the subject matter hereof.  Except as otherwise herein provided, no variations, modifications, changes, or amendments hereof shall be binding upon any party hereto unless in writing, executed by a duly authorized officer or agent of the particular party. Landlord and Tenant have fully negotiated the provisions of this Lease and, notwithstanding any rule or principle of law or equity to the contrary, no provision of the Lease shall be construed in favor of or against either party by virtue of the authorship or purported authorship thereof.

Lease Agreement – Page 12

Copy from re:SearchTX

42.     Severability.  If any term or provision of this Lease shall be invalid or unenforceable to any extent, the remainder of this Lease shall not be affected thereby, and each term and provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

43.     Binding Effect.  All covenants and obligations contained within this Lease shall bind and inure to the benefit of Landlord, its successors and assigns, and shall be binding upon Tenant, its permitted successors and assign.

44.     Number and Gender of Words.  All personal pronouns used in this Lease shall include the other gender, whether used in the masculine, feminine, or neuter gender, and the singular shall include the plural whenever and as often as may be appropriate.

45.     Recordation.  Tenant shall not record this Lease.

46.     Governing Law.  This Lease and the rights and obligations of the parties hereto shall be interpreted, construed, and enforced in accordance with the laws of the State of Texas.

47.     Interest Rate.  All past-due rents or other sums payable by Tenant hereunder, and any sums advanced by Landlord for Tenant's account pursuant to applicable provisions hereof, shall bear interest from the date due or advanced until paid at the maximum lawful rate in effect at the time such payment was due or sum was advanced, or if there is no ascertainable maximum lawful rate then in effect, at a rate of five percent (5%) per annum.

48.     Force Majeure.  Whenever a period of time is herein prescribed for the taking of any action by Landlord, Landlord shall not be liable or responsible for, and there shall be excluded from the computation of such period of time, any delays due to strikes, riots, acts of God, shortages of labor or materials, war governmental laws, regulations or restrictions, or any act, omission, delay, or neglect of Tenant or any of Tenant's employees or agents, or any other cause whatsoever beyond the control of Landlord.

49.     Rules and Regulations.  Tenant shall comply with the Rules and Regulations of Landlord in the form of Exhibit C as well as all changes therein and additions thereto that may from time to time be adopted by Landlord for the operation and protection of the Buildings and the protection and welfare of its tenants and invitees.  Landlord expressly reserves the right at any time and from time to time to make such reasonable changes in and additions to such Rules and Regulations, provided, however, that same shall not become effective and a part of this Lease until a copy thereof shall have been delivered to Tenant.

50.     Reserved Rights.  Without limiting in any way Landlord's right to promulgate rules and regulations, Landlord shall have the following rights, without liability to Tenant for damage or injury to property, persons or business and without effecting an eviction, constructive or actual, or disturbance of Tenant's use or possession or giving rise to any claim for set off or abatement of rent (to the extent applicable):

    (a)     To approve any and all signs on the exterior and interior of the Buildings, subject to Landlord's reasonable approval.

    (b)     To have and retain a paramount title to the Premises free and clear of any act of Tenant purporting to burden or encumber them.

51.     Brokers.  Tenant represents and warrants that Tenant has had no dealing with any broker in connection with the negotiation or execution of this Lease, and Tenant agrees to indemnify Landlord and hold Landlord harmless from any and all costs, expenses or liability for commissions or other compensation claimed by any broker or agent other than the party named above with respect to this Lease.

52.     Time of Essence.  Time is of the essence of this Lease and each and every provision of this Lease.

53.     Best Efforts.  Whenever in this Lease there is imposed upon Landlord the obligation to use Landlord's best effort or reasonable efforts or diligence, Landlord will be required to exert such efforts or diligence only to the extent the same are economically feasible and will not impose upon Landlord extraordinary financial or other burdens.

Lease Agreement – Page 13

Copy from re:SearchTX

**EXHIBIT A**

54.    <u>No Reservation.</u>  Submission by Landlord of this instrument to Tenant for examination or signature does not constitute a reservation of or option for lease.  This Lease will be effective as a lease or otherwise only upon execution and delivery by both Landlord and Tenant.

55.    <u>Consents.</u>  Whenever Landlord's consent is required under this Lease, such consent may be withheld by Landlord in its reasonable discretion, but must promptly notify Tenant of its intent and reason for withholding consent.

56.    <u>Legal Authority.</u>  If Tenant is a corporation (including any form of professional association), then each individual executing or attesting this Lease on behalf of such corporation covenants, warrants and represents that he is duly authorized to execute or attest and deliver this Lease on behalf of such corporation.  If Tenant is a partnership (general or limited), then each individual executing this Lease on behalf of the partnership hereby covenants, warrants and represents that he is duly authorized to execute and deliver this Lease on behalf of the partnership in accordance with the partnership agreement, or an amendment thereto, now in effect.

57.    <u>Exhibits, Riders and Addenda.</u>  Exhibits A, B, C, D, E, Schedule F, and any other exhibits, riders and addenda attached hereto are incorporated herein and made a part of this Lease for all purposes.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease in multiple original counterparts as of the date and year first above written.

<u>**LANDLORD**</u>:

**ARROW CHILD & FAMILY MINISTRIES,**
a Texas non-profit corporation

By: _____
Name:    Paula Weger
Title:    Chief Financial Officer

Date:    11/3/2021

<u>**TENANT**</u>:

**RITE OF PASSAGE,**
a Nevada Corporation

By: _____
Name:  S. James Broman
Title:  President / CEO

Date:  10/21/21

Copy from re:SearchTX

## EXHIBIT A

### DESCRIPTION OF BUILDINGS

| Building | Name | Square Feet | Year built | Construction Class |
|---|---|---|---|---|
| 1 | Ranch House | 2,978 | 1965 | D-Wood Frame/Brick |
| 2 | RTC #1 | 7,722 | 2016 | D-Wood Frame |
| 3 | Office | 3,860 | 1994 | D-Wood Frame |
| 4 | Gym | 5,000 | 1994 | S-Steel Frame |
| 5 | Cafeteria | 2,400 | 2000 | D-Steel Frame |
| 6 | Alternative Home | 3,011 | 1955 | D-Wood Frame |
| 8 | RTC #2 | 7,722 | 2018 | D-Wood Frame |

*The Mobile Home shown below will be removed by Landlord and shall not be considered part of the Complex*



Copy from re:SearchTX

**EXHIBIT B**

**FLOOR PLAN OF RTC 1 & 2**





Exhibit B– Page 2

Copy from re:SearchTX

**EXHIBIT A**

## EXHIBIT C

## BUILDING RULES AND REGULATIONS

1.       Unless otherwise expressly agreed in writing by Landlord, no signs will be allowed in any form on the exterior of the Buildings or the interior or exterior of windows, (ii) no signs except in uniform location and uniform style fixed by Landlord will be permitted in the public corridors or on corridor doors or entrances to Tenant's space, and (iii) the construction and/or installation of all authorized signs will be contracted for by Landlord for Tenant at the rate fixed by Landlord from time to time and Tenant will be billed and pay for such service promptly on receipt thereof. All lettering and signage appearing on or visible from the exterior of the Premises shall be subject to the prior written approval of Landlord.

2.       Except as used in connection with Tenant's permitted use of the Premises, Tenant shall not place, install or operate on the Premises or in any part of the Buildings, any engine, stove, or machinery, or conduct mechanical operations or cook thereon or therein, or place or use in or about the Premises any explosives, gasoline, kerosene, oil, acids, caustics, or any other inflammable, explosive, or hazardous material without written consent of Landlord.

3.       Landlord shall not be responsible for lost or stolen personal property, equipment, money or jewelry from Tenant's area or public rooms regardless of whether such loss occurs when such area is locked against entry or not.

4.       Tenant shall not do, or permit anything to be done in or about the Buildings, or bring or keep anything therein that will in any way increase the rate of fire or other insurance on the Buildings, or on property kept therein, or obstruct or interfere with the rights of, or otherwise injure or annoy, other tenants, or do anything contrary to or in Conflict with valid laws, rules or regulations of any municipal or governmental authority or fire, safety or building authority or regulation.

Exhibit C– Page 1

Copy from re:SearchTX

**EXHIBIT A**

**EXHIBIT D**

**FACILITY USE SUMMARY**

| Includes: |
| --- |
| 32,693 rentable square ft (approximate) |
| Office Furniture (AS-IS) |
| Residential Furniture (AS-IS) |
| Kitchen Equipment (AS-IS) |
| Laundry Facility (AS-IS) |
| Parking (AS-IS) |
| Security Cameras/Closed Circuit Monitoring (AS-IS) |
| Gym/Equine Facility Use (AS-IS) |
| IT Equipment for 90 days |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

Exhibit D– Page 1

Copy from re:SearchTX

**EXHIBIT A**

**EXHIBIT E**

**Insurance Requirements**

**1.    Specific Insurance Requirements**

The following insurance shall be maintained in effect with limits not less than those set forth below at all times during the term of this Lease and thereafter as required:

| Insurance | Coverage/Limits | Other Requirements |
|---|---|---|
| Commercial General Liability (Occurrence Basis) | ▪ $1,000,000 Per Occurrence<br>▪ $3,000,000 General Aggregate<br>▪ $2,000,000 Products/Completed Operations Aggregate<br>▪ $1,000,000 Personal And Advertising Injury<br>▪ $5,000 Medical Expense<br>▪ $1,000,000 Damage to Rented Premises | ▪ Current ISO edition of CG 00 01<br>▪ The personal injury contractual liability exclusion shall be deleted.<br>▪ **Additional insured status shall be Primary and Noncontributory and provided in favor  of Landlord**<br>▪ CGL coverage shall be endorsed to provide primary and non-contributory liability coverage.<br>▪ This policy shall be endorsed to provide thirty (30) days prior written notice of cancellation of coverage to Contractor.<br>▪ The following exclusions/limitations (or their equivalent(s), are prohibited:<br>  o Any Punitive, Exemplary or Multiplied Damages exclusion |
| PROPERTY | SEE ATTACHED SCHEDULE F FOR PROPERTY VALUE LIMITS | |

Exhibit E– Page 1

Copy from re:SearchTX

**EXHIBIT A**

| Business Auto Liability | $1,000,000 Per Accident | <ul><li>Current ISO edition of CA 00 01</li><li>Arising out of any auto (Symbol 1), including owned, hired and non-owned</li></ul> |
|---|---|---|
| Workers' Compensation and Employer's Liability | <ul><li>Statutory Limits</li><li>$1,000,000 Each Accident and Disease</li></ul> | <ul><li>State where work is to be performed must be listed under Item 3.A. on the Information Page.</li><li>Such insurance shall cover liability arising out of the Tenant's employment of workers and anyone for whom the Tenant may be liable for workers' compensation claims. Workers' compensation insurance is required, and no "alternative" forms of insurance shall be permitted.</li><li>Where a Professional Employer Organization (PEO) or "leased employees" are utilized, Tenant shall require its leasing company to provide Workers' Compensation insurance for said workers and such policy shall be endorsed to provide an Alternate Employer endorsement in favor of Tenant.</li></ul> |
| Excess/Umbrella Liability (Occurrence Basis) | $5,000,000 Each Occurrence | <ul><li>Such insurance shall be excess over and be no less broad than all coverages described above.</li><li>Such insurance shall be endorsed to be primary and non-contributory to any liability insurance, whether primary, excess or umbrella, held by the Tenant.</li><li>Drop-down coverage shall be provided for reduction and/or exhaustion of underlying aggregate limits and shall include a duty to defend any insured.</li></ul> |

**2.** **General Insurance Requirements**

**A.** **Policies.**

i.   It is the intent of the parties to this Lease that all General Liability and Excess/Umbrella insurance coverage required herein shall be primary and non-contributory to any liability insurance, whether primary, umbrella or excess, held by the Landlord. It is the specific intent that all insurance held by Landlord shall be excess, secondary and non-contributory.

ii.   All policies must:

    a.   Be written through insurance companies authorized to do business in the State in which the work is to be performed and rated no less than A-: VII in the most current edition of A. M. Best's Key Rating Guide.

    b.   Provide a waiver of subrogation in favor of Landlord on all insurance coverage carried by Tenant, whether required herein or not

    c.   Be provided to the Landlord in compliance with the requirements herein and shall contain no endorsements that restrict, limit, or exclude coverage required herein in any manner without the prior express written approval of the Landlord.

iii.   Failure of Landlord to demand such certificate or other evidence of full compliance with these insurance requirements or failure of Landlord to identify a deficiency from evidence that is provided shall not be

Copy from re:SearchTX

construed as a waiver of the Tenant's obligation to maintain such insurance.

iv. Tenant shall provide to the Landlord a certified copy of all insurance policies required herein within ten (10) days of any such request. Renewal policies, if necessary, shall be delivered to the Landlord prior to the expiration of the previous policy. Additional Insured endorsements shall be provided with the insurance certificate

v. Commencement of Operations without provision of the required certificate of insurance and/or required endorsements, or without compliance with any other provision of this Exhibit E and/or the Lease, shall not constitute a waiver by any Landlord of any rights. The Tenant shall have the right, but not the obligation, of prohibiting the Landlord from performing any Operations until such certificate of insurance and/or required endorsements are received and approved by the Tenant.

**B.** **Limits, Deductibles and Retentions**

i. The limits of liability may be provided by a single policy of insurance or by a combination of primary and excess/umbrella policies, but in no event shall the total limits of liability available for any one occurrence or accident be less than the amount required herein.

ii. No deductible or self-insured retention shall exceed $25,000 without prior written approval of the Landlord, except as otherwise specified herein. All deductibles and/or retentions shall be paid by, assumed by, for the account of, and at the Tenant's sole risk. The Tenant shall not be reimbursed for same.

**C.** **Forms**

i. If the forms of policies, endorsements, certificates or evidence of insurance required by this Exhibit are superseded or discontinued, Landlord will have the right to require other equivalent forms.

ii. Any policy or endorsement form other than a form specified in this Exhibit must be approved in advance by Landlord

iii. If the Additional Insured requirements are deemed to violate any law, statute or ordinance, the additional insured requirements, including any additional insured policy provision or endorsements procured pursuant to this Exhibit E and/or the Lease, shall be reformed to provide the maximum amount of protection to the Landlord as allowed under the law.

**D.** **Evidence of Insurance.** Insurance must be evidenced as follows:

i. ACORD Form 25 Certificate of Liability Insurance, or any other form approved by the Texas Department of Insurance.

ii. Evidence shall be provided to Landlord prior to commencing Operations and prior to the expiration of any required coverage.

iii. Approved certificate form shall specify:

   a. Landlord as certificate holder at Landlord's mailing address;

   b. Insured's name, which must match that listed on this Exhibit E and/or the Lease;

   c. Insurance companies producing each coverage and the policy number and policy date of each coverage;

   d. Producer of the certificate with correct address and phone number and have the signature of the authorized representative of the producer;

   **e. Additional Insured status, in a form acceptable to Landlord in favor of Landlord;**

   f. Amount of any deductible or self-insured retention in excess of $10,000;

   g. Primary and non-contributory status;

   h. Waivers of subrogation; and

   i. All exclusions and limitations added by endorsement to the General Liability and Excess/Umbrella coverages. This can be achieved by attachment of the Schedule of Forms and Endorsements page.

iv. Copies of the following policy provisions and/or endorsement(s) shall also be provided:

   ▪ **Additional Insured status;**

   ▪ 30 Day Notice of Cancellation endorsement; and _____

   ▪ Schedule of Forms and Endorsements pages applicable to the General Liability and Excess/Umbrella policies.

**E.** **Landlord Insurance Representations to Tenant**

Exhibit E– Page 3

Copy from re:SearchTX



**EXHIBIT A**

i.  It is expressly understood and agreed that the insurance coverages required herein (a) represent Landlord's minimum requirements and are not to be construed to void or limit the Tenant's indemnity obligations, or available insurance limits, as contained in this Exhibit E and/or the Lease nor represent in any manner a determination of the insurance coverages the Tenant should or should not maintain for its own protection; and (b) are being, or have been, obtained by the Tenant in support of the Tenant's liability and indemnity obligations under this Exhibit E and/or the Lease. Irrespective of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of the Tenant, or the failure of any insurance company to pay claims accruing, shall not be held to affect, negate or waive any of the provisions of this Exhibit E and/or the Lease.

ii.  Failure to obtain and maintain the required insurance shall constitute a material breach of, and default under, this Exhibit E and/or the Lease. If the Tenant shall fail to remedy such breach within five (5) business days after notice by the Landlord , the Tenant will be liable for any and all costs, liabilities, damages and penalties resulting to the Landlord from such breach, unless a written waiver of the specific insurance requirement(s) is provided to the Tenant by the Landlord. In the event of any failure by the Tenant to comply with the provisions of this Exhibit E and/or the Lease, the Landlord may, without in any way compromising or waiving any right or remedy at law or in equity, on notice to the Tenant, purchase such insurance, at the Tenant's expense, provided that the Landlord shall have no obligation to do so and if the Landlord shall do so, the Tenant shall not be relieved of or excused from the obligation to obtain and maintain such insurance amounts and coverages.

iii.  This Exhibit E is an independent contract provision and shall survive the termination or expiration of the Lease.

F.  ~~THE TENANT HEREBY RELEASES THE LANDLORD FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION WHATSOEVER WHICH THE TENANT MIGHT OTHERWISE NOW OR HEREAFTER POSSESS RESULTING IN OR FROM OR IN ANY WAY CONNECTED WITH ANY LOSS COVERED BY INSURANCE, WHETHER REQUIRED HEREIN OR NOT, OR WHICH SHOULD HAVE BEEN COVERED BY INSURANCE REQUIRED HEREIN, INCLUDING THE DEDUCTIBLE AND/OR UNINSURED PORTION THEREOF, MAINTAINED AND/OR REQUIRED TO BE MAINTAINED BY THE LANDLORD PURSUANT TO THIS EXHIBIT E AND/OR THE LEASE, REGARDLESS OF WHETHER OR NOT ANY SUCH LOSS, CLAIMS OR CAUSES OF ACTION ARE CAUSED IN WHOLE OR IN PART BY ANY BREACH OF CONTRACT, OR NEGLIGENCE OF LANDLORD, WHETHER ACTIVE OR PASSIVE, SOLE, JOINT OR CONCURRENT, OR GROSS NEGLIGENCE.~~

Copy from re:SearchTX

**EXHIBIT A**

# SCHEDULE F

## PROPERTY VALUE LIMITS REQUIRED ON TENANT'S PROPERTY INSURANCE POLICY(S)

| Loc # | Address | Occupancy | 2021 SQ FT | Bldg Value | Contents Value | Total Value |
|---|---|---|---|---|---|---|
| 4-1 | 4655 S FM 1258 | Office | 3,860 | $267,884 | $50,000 | $317,884 |
| 4-2 | 4655 S FM 1258 | Dining Hall | 2,429 | $150,600 | $10,000 | $160,600 |
| 4-3 | 4655 S FM 1258 | Gym | 5,000 | $259,950 | $15,000 | $274,950 |
| 4-4 | 4655 S FM 1258 | Shop 1 (warehouse) | 547 | $24,057 | $1,000 | $25,057 |
| 4-5 | 4655 S FM 1258 | Shop 2 (Tack House) | 960 | $17,760 | $10,000 | $27,760 |
| 4-6 | 4655 S FM 1258 | Quonset Barn | 3,200 | $45,428 | $500 | $45,928 |
| 4-7 | 4655 S FM 1258 | 5 Bedroom Residence | 2,403 | $219,507 | $10,000 | $229,507 |
| 4-10 | 4655 S FM 1258 | Duplex 2 | 3,047 | $186,244 | $10,000 | $196,244 |
| 4-13 | 4655 S FM 1258 | Water Well by Café | 50 | $10,000 | $0 | $10,000 |
| 4-14 | 4655 S FM 1258 | Water Well by SH #4 | 50 | $10,000 | $0 | $10,000 |
| 4-15 | 4655 S FM 1258 | Water Well by SH #2 | 50 | $10,000 | $0 | $10,000 |
| 4-16 | 4655 S FM 1258 | Water Well by SH #5 | 50 | $10,000 | $0 | $10,000 |
| 4-17 | 4655 S FM 1258 | Residential Bldg | 7,713 | $850,000 | $100,000 | $950,000 |
| 4-18 | 4655 S FM 1258 | Boarding/Rooming House | 7,713 | $850,000 | $100,000 | $950,000 |
| 4-19 | 4655 S FM 1258 | Fences | 4,000 | $60,000 | | $60,000 |
| 4-20 | 4655 S FM 1258 | Security Gates | 3 | $15,000 | | $15,000 |
| 4-21 | 4655 S FM 1258 | Playground | 1 | $25,000 | | $25,000 |
| 4-22 | 4655 S FM 1258 | Gravel | 30,000 | $30,000 | | $30,000 |

**Landlord shall be named as loss payee on all property coverage.**

Copy from re:SearchTX



**EXHIBIT B**

August 12, 2022

*Re: Lease Agreement,("Lease") dated November 1, 2021, by and between ARROW CHILD & FAMILY MINISTRIES ("Landlord"), and RITE OF PASSAGE, INC. ("Tenant")*

**60 DAY NOTICE OF TERMINATION OF LEASE**

To:   ARROW CHILD & FAMILY MINISTRIES
Attn: Paula Weger, CFO
2929 FM 2920 Road
Spring, TX 77388
paula.weger@arrow.org

Pursuant to Article 1.(j) "Tenant's Early Termination Right" of the subject Lease, Tenant hereby tenders its written notice that its Provider Service Agreement(s) have terminated and Tenant is exercising its Early Termination Right under the Lease.

Tenant shall vacate the premises on or before September 30, 2022.

RITE OF PASSAGE, INC.

Barbara J. Ross, General Counsel

Cc: Scott Lundy, CEO
Anjanette Sauers, VP of Finance

**RITE OF PASSAGE, INC.**

*"Dedicated to improving the lives of youth, families and communities."*

2560 BUSINESS PARKWAY, SUITE A | MINDEN, NV 89423 | 775-267-9411 | FAX 775-267-9420 | WWW.RITEOFPASSAGE.COM

Copy from re:SearchTX



**EXHIBIT C**

James H. Stilwell
Steven C. Earl
Robin L. Apostolakis*
*Board Certified Estate Planning & Probate
Texas Board of Legal Specialization

STILWELL, EARL & APOSTOLAKIS LLP

Direct Dial  281.419.6200
Direct Fax  281.419.0250

September 8, 2022

**<u>VIA CERTIFIED MAIL RRR and VIA EMAIL TO:</u>**
BARBARA J. ROSS PLC
Attn: Barbara J. Ross, General Counsel
P.O. Box 4973
Scottsdale, AZ 85251
barbara.ross@rop.com

> *Re: Request for Supporting Documentation from ROP*

Dear Ms. Ross:

Arrow is in receipt of your letter dated September 2, 2022, in which you describe ROP's alleged issues with certain Providers (i.e., Providers failure to pay and unilateral breaches of the subject Provider Agreements). Arrow does not concede the positions taken in the letter are correct.

Prior to a face-to-face meeting, Arrow requests you provide documents and information in support of the assertions you made in your letter.  Please provide the supporting documents evidencing these failures by Providers as well as proof of any and all unpaid balances. Arrow requests that this supporting documentation include (but not be limited to) (i) all unpaid invoices held by ROP, (ii) an aging report on ROP's overdue accounts receivable, and (iii) proof of the following:

1. TFI/2Ingage's termination of their agreement dated January 29, 2022;
2. TFI/2Ingage's unpaid guaranteed bed past-due balance of $55,200;
3. Belong's notice of termination of their agreement on 5/26/22;
4. Belong's unpaid guaranteed bed past-due balance of $128,020;
5. OCOK's notice of termination of their agreement on 5/28/22;
6. OCOK's unpaid guaranteed bed past-due balance of $594,900;
7. St Francis's notice of termination of their agreement on 6/1/22; and
8. St Francis's unpaid guaranteed bed past-due balance of $311,783.

Please provide the requested documents to the following email address: steven@woodlandstxlawfirm.com.  If you have any questions or concerns regarding this matter, please do not hesitate to contact me.

Sincerely,

Steven C. Earl
Counsel for Arrow Child & Family Ministries

Cc: Carolyn Jenkins-Bower, CFO

Copy from re:SearchTX

**EXHIBIT D**



**Rite of Passage, Inc. – Yellow Canyon Academy
2560 Business Parkway
Minden, NV 89423**

**Date: 05/26/22**

**Subject: Belong Contract Termination Notice**

**Dear Mr. Alexander,**

**This letter is to provide notice of termination of the Rite of Passage, Inc. (Yellow Canyon Academy) and Belong Provider Service Agreement Compensation Amendment.**

**Per section 7.2 Termination with Notice. Either party may terminate this Agreement with or without cause for any reason upon 60 days written notice. To the extent Provider does not provide the full range of contracted Services during the 60-day period, Provider shall receive payments in proportion to the Services provided, with appropriate documentation, and in accordance with the requirements of the Provider Manual and this Agreement.**

**This letter serves as a written notice of termination.**

**The last active date of the Provider Service Agreement was on 07/25/22.**

**If you have any questions or concerns, please feel free to contact me at ymoran@sjrctexas.org.**

**Regards,**
*Yvette Moran*
**Director of Quality Assurance and Contracts**

**1400 RidgeCreek Lane
Bulverde, TX 78163
210.876.6763
belong@sjrctexas.org**

Copy from re:SearchTX

**EXHIBIT D**



Providing healing and hope to
children and families

June 1, 2022

Rite of Passage
ATTN: Carolyn Jenkins-Bower
2560 Business Parkway, Suite A
Minden, NV  89423

Dear Ms. Jenkins-Bower,

Pursuant to Article 7 Term and Termination; 7.2 Termination with Notice and the Compensation Agreement.

This is the official notice that Saint Francis Community Services in Texas is terminating the Right of Passage Compensation Agreement signed November 5, 20121. Termination is due to failure to follow the terms of the contract. As confirmed in multiple communications, guaranteed bed payment will not be provided due to Rite of Passage being unable to meet the terms of the agreement.

Sincerely,

*Cristian Garcia*

Cristian Garcia
Regional Vice President
Saint Francis Community Services in Texas, LLC

CC:
Barbara J. Ross, Esq.
Allison Longobardo, Provider Relations

Sent by email and US Mail

Copy from re:SearchTX

**EXHIBIT D**

CERTIFIED MAIL

May 23, 2022

Rite of Passage, Inc.
Attn: Carolyn Jenkins-Bower, CFO
2560 Business Parkway, Suite A
Minden, NV  89423
Email: cj.bower@rop.com

RE:      Termination of Compensation Amendment to SSCC Provider Services Agreement

Ms. Jenkins-Bower:

Pursuant to section 7.2 of the compensation amendment to the SSCC Provider Services Agreement
between ACH Child and Family Services and Rite of Passage, Inc, please accept this letter as our official
60 days written notification to terminate the compensation amendment, which was executed by both
parties on December 10, 2021.

We agree to continue with the original language, payment terms and rates as stated in the contract
sections 5, 7 and Exhibit A.

Sincerely,

Wayne Carson, CEO
ACH Child and Family Services

Copy from re:SearchTX

**EXHIBIT D**



## DEVOTED TO THE STRENGTH OF FAMILY

January 31, 2022

Michelle McNeely
Business Manager
2560 Business Pkwy, Suite A
Minden, NV 89423

Re:     Provider Agreement – Texas Family Initiative LLC

Dear Michelle:

As previously communicated by email to you and Mike Cantrell on Friday, January 28, 2022, this letter is intended as a notice of the intent of Texas Family Initiative LLC to enter into negotiations with Rite of Passage to restructure the Provider Agreement executed on December 7, 2021. The goal of these discussions is to address and resolve the multiple issues surrounding the Yellow Canyon facility. At this time, it is our intent to engage in these negotiation discussions jointly with the other SSCCs.

Also, concurrent with this notice of intent to negotiate, this letter is a written 60 day notice of the intent of Texas Family Initiative LLC to terminate the Provider Agreement per section 7.2 of the Provider Agreement. The termination date shall be 60 days following the postmarking of this letter. If negotiations result in an executed contract between Texas Family Initiative LLC and Rite of Passage prior to the termination date, Texas Family Initiative LLC will consider the withdrawal of the notice of termination.

Let me know if you have any questions.

Sincerely,

Brenden Long
General Counsel
Texas Family Initiative LLC
217 SE 4th St.
Topeka, Kansas 66603
blong@tfifamily.org
785-350-6147





Pathway Family Services
An agency of TFI



NONPROFIT
AN AGENCY OF TFI



TFI Family of Companies
www.tfifamily.org | www.pathwayfs.org | www.teammns.org | www.2ingage.org

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Heather Scott on behalf of Steven Earl
Bar No. 24002028
heather@meslawfirm.com
Envelope ID: 70082019
Status as of 11/10/2022 4:26 PM CST

Associated Case Party: Arrow Child & Family Ministries

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Steven CEarl | | efiletxsce@gmail.com | 11/10/2022 4:03:38 PM | SENT |
| Steven CEarl | | steven@woodlandstxlawfirm.com | 11/10/2022 4:03:38 PM | SENT |
| Emory C.Powers | | emory@woodlandstxlawfirm.com | 11/10/2022 4:03:38 PM | SENT |
| Heather Scott | | Heather@woodlandstxlawfirm.com | 11/10/2022 4:03:38 PM | SENT |

Filed
Submitted 12/9/2022 11:15 AM
Stephnie Menke
District Clerk Potter County, Texas
Envelope No. 70862040
Filed: 12/9/2022 4:03 PM
By: BN

CAUSE NO. 111269-D-CV

| | | |
|---|---|---|
| Arrow Child & Family Ministries | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| | § | POTTER COUNTY, TEXAS |
| | § | |
| Rite of Passage, Inc. | § | |
| *Defendant.* | § | 320TH JUDICIAL DISTRICT |

## PLAINTIFF'S CERTIFICATE OF SERVICE UPON TEXAS SECRETARY OF STATE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ARROW CHILD & FAMILY MINISTRIES ("Arrow" or "Plaintiff"), advising this Court that Plaintiff was not successful in its attempt to serve the Registered Agent of RITE OF PASSAGE, INC. ("ROP" or "Defendant") because the address for the Registered Agent is out of date. The Registered Agent has not been at the address listed with the Texas Secretary of State since 2012. See Exhibit A attached hereto. Therefore, Plaintiff has served the Texas Secretary of State with the Citation and a copy of Plaintiff's First Amended Petition in accordance with Tex. R. Civ. P. 17.026. The Texas Secretary of State received the Citation and Plaintiff's First Amended Petition on November 21, 2022

Pursuant to Plaintiff's request, the Texas Secretary of State will provide its Certificate of Service when service has been completed.

Respectfully submitted,

STILWELL, EARL & APOSTOLAKIS, LLP

By____/s/Steven C. Earl_____

Plaintiff's Certificate of Service
Page 1

Copy from re:SearchTX

Steven C. Earl
State Bar No. 24002028
Emory C. Powers
State Bar No. 24131597
1400 Woodloch Forest Dr., Suite 590
The Woodlands, Texas 77380
Tel:     281/419-6200
Fax:     281/419-0250
Attorney for Plaintiff

Copy from re:SearchTX

**CAUSE NO. 111269-D-CV**

**ARROW CHILD & FAMILY MINISTRIES**
VS.
**RITE OF PASSAGE, INC**

**IN THE DISTRICT COURT**
**POTTER COUNTY, TEXAS**
**320TH JUDICIAL DISTRICT**

**AFFIDAVIT OF ATTEMPTS**

My name is <u>**ROGER BIGONY, SCH 5307; EXP: 6/30/22**</u>. I am over the age of eighteen (18). I have never been convicted of a felony or a crime of moral turpitude. I am competent to make these statements contained in this affidavit.

I was assigned to deliver process in the above styled case and cause upon the below named defendant:

**RITE OF PASSAGE, INC C/O REGISTERED AGENT ALICIA DAVIS, 4404 MEADOWVIEW LANE, SACHSE, TEXAS, 75048**

The following efforts to deliver to the defendant a true copy of the Citation, PLAINTIFF'S ORIGINAL PETITION on the following date(s) with stated results:

11/5 @ 10:13 a.m. - No answer, no answer at neighbors, left door tag on front door. 11/8 @ 12:19 p.m. - Spoke to current owner/resident, who stated they purchased this home from them in 2012. Moved and left no forwarding address.

**FURTHER AFFIANT SAYETH NOT.**

**ROGER BIGONY, SCH 5307; EXP: 6/30/24**
**CLEAR LEGAL PROCESS SERVICE**
**P.O. BOX 62945**
**HOUSTON, TX 77205**

Before me, a notary public, on this day personally appeared the above named Authorized Person, known to me whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct. Given under my hand and seal of office on this the _29th_ day of _Nov._ , _2022_.

NOTARY PUBLIC IN AND
FOR THE STATE OF TEXAS

WENDY BIGONY
Notary Public, State of Texas
Comm. Expires 06-26-2025
Notary ID 5720909

Copy from re:SearchTX

20120919001179100   09/19/2012 03:12:28 PM D1  1/3

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

GF# 1012 - 24896  RTT/SLL

# GENERAL WARRANTY DEED

That

### ALICIA K. DAVIS and KENDALL DAVIS

(hereinafter called "Grantor," whether one or more, masculine, feminine or neuter) for and in consideration of the sum of TEN and no/100 DOLLARS and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, paid by

### SAID TBAINI and SIMONE TBAINI

(hereinafter called "Grantee," whether one or more, masculine, feminine or neuter), for which no lien is retained either express or implied, has Granted, Sold and Conveyed, and by these presents does hereby Grant, Sell and Convey, unto the said Grantee all that certain real property described as follows:

> LOT 2, BLOCK B, WOODBRIDGE, PHASE 8, AN ADDITION TO THE CITY OF SACHSE, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME Q, PAGE 454, PLAT RECORDS, COLLIN COUNTY, TEXAS.

together with all improvements thereon, if any, and all rights, privileges, tenements, hereditaments, rights of way, easements, appendages and appurtenances, in anyway appertaining thereto, and all right, title and interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the above-described property or any part thereof (hereinafter, the "Property").

This deed is executed and delivered subject to all easements, reservations, conditions, covenants and restrictive covenants as the same appear of record in the office of the County Clerk of the county in which the Property is located, and property taxes for the current year and subsequent years, the payment of which Grantee assumes.

TO HAVE AND TO HOLD the above described Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee, his, her or its

Page 1

Copy from re:SearchTX

successors, heirs and assigns, as the case may be, forever; and Grantor does hereby bind Grantor and Grantor's successors, heirs, executors and administrators, as the case may be, to Warrant and Forever Defend all and singular the said Property unto the said Grantee and Grantee's successors, heirs and assigns, as the case may be, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

Executed this 14 day of September, 20 12

ALICIA K. DAVIS

KENDALL DAVIS

## ACKNOWLEDGMENT

STATE OF TX §
COUNTY OF Collin §

Before me, the undersigned authority, on this day personally appeared **ALICIA K. DAVIS**, [check one] ___ known to me or ✓ proved to me through  DL (description of identity card) to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that said person executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14 day of September, 20 12

Notary Public, State of
Printed name:
Commission expires:

DENISE SHERWOOD
Notary Public
State of Texas
Comm. Expires 03/17/2015

Page 2

Copy from re:SearchTX

ACKNOWLEDGMENT

STATE OF TX §
COUNTY OF Collin §

Before me, the undersigned authority, on this day personally appeared **KENDALL DAVIS**, [check one] ___ known to me or ✓ proved to me through D.L. _____ (description of identity card) to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that said person executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14 day of September, 20 12

Notary Public, State of
Printed name:
Commission expires:

DENISE SHERWOOD
Notary Public
State of Texas
Comm. Expires 03/17/2015

GRANTEE'S ADDRESS:
**SAID TBAINI and SIMONE TBAINI**
4404 Meadowview Lane
Sachse, Texas 75048

Page 3

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
09/19/2012 03:12:28 PM
$24.00 CJAMAL
20120919001179100

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Heather Scott on behalf of Steven Earl
Bar No. 24002028
heather@meslawfirm.com
Envelope ID: 70862040
Status as of 12/9/2022 4:04 PM CST

Associated Case Party: Arrow Child & Family Ministries

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Steven CEarl | | efiletxsce@gmail.com | 12/9/2022 11:15:50 AM | SENT |
| Heather Scott | | Heather@woodlandstxlawfirm.com | 12/9/2022 11:15:50 AM | SENT |
| Steven CEarl | | steven@woodlandstxlawfirm.com | 12/9/2022 11:15:50 AM | SENT |
| Emory C.Powers | | emory@woodlandstxlawfirm.com | 12/9/2022 11:15:50 AM | SENT |

Filed
Submitted 12/9/2022 11:15 AM
Stephnie Menke
District Clerk Potter County, Texas
Envelope No. 70862040
Filed 12/9/2022 4:03 PM
By: BN

CAUSE NO. 111269-D-CV

| | | |
|---|---|---|
| Arrow Child & Family Ministries | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| | § | POTTER COUNTY, TEXAS |
| | § | |
| Rite of Passage, Inc. | § | |
| *Defendant.* | § | 320TH JUDICIAL DISTRICT |

## PROOF OF SERVICE OF CITATION AND FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ARROW CHILD & FAMILY MINISTRIES ("Arrow" or "Plaintiff"), filing this proof of service. The citation and Plaintiff's First Amended Petition were served on Defendant via the Texas Secretary of State by U.S. Postal Service Certified Mail. The signed return receipt, PS Form 3811 ("green card"), is attached as proof of service on named defendant.

Respectfully submitted,

STILWELL, EARL & APOSTOLAKIS, LLP

By ___/s/Steven C. Earl_____
        Steven C. Earl
        State Bar No. 24002028
        Emory C. Powers
        State Bar No. 24131597
1400 Woodloch Forest Dr., Suite 590
The Woodlands, Texas 77380
Tel:    281/419-6200
Fax:   281/419-0250
Attorney for Plaintiff

Copy from re:SearchTX

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery |
| 1. Article Addressed to:<br><br>**Service of Process**<br>**Texas Secretary of State**<br>P.O. Box 12079<br>Austin, TX 78711-2079 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>TX Comptroller Mail<br><br>NOV 21 2022 |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 7834 2234 0209 80

| 3. Service Type | |
|---|---|
| ☐ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☒ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Signature Confirmation™ |
| ☐ Collect on Delivery | ☐ Signature Confirmation Restricted Delivery |
| ☐ Collect on Delivery Restricted Delivery | |
| ☐ Insured Mail | |
| ☐ Insured Mail Restricted Delivery (over $500) | |

2. Article Number *(Transfer from service label)*

7019 2970 0001 8658 3787

PS Form **3811**, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Heather Scott on behalf of Steven Earl
Bar No. 24002028
heather@meslawfirm.com
Envelope ID: 70862040
Status as of 12/9/2022 4:04 PM CST

Associated Case Party: Arrow Child & Family Ministries

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Heather Scott | | Heather@woodlandstxlawfirm.com | 12/9/2022 11:15:50 AM | SENT |
| Steven CEarl | | steven@woodlandstxlawfirm.com | 12/9/2022 11:15:50 AM | SENT |
| Emory C.Powers | | emory@woodlandstxlawfirm.com | 12/9/2022 11:15:50 AM | SENT |
| Steven CEarl | | efiletxsce@gmail.com | 12/9/2022 11:15:50 AM | SENT |

Copy from re:SearchTX

Filed
Submitted 1/19/2023 3:20 PM
Stephnie Menke
District Clerk Potter County, Texas
Envelope No. 71955036
Filed: 1/20/2023 9:15 AM
By: PB

CAUSE NO. 111269-D-CV

| | | |
|---|---|---|
| ARROW CHILD & FAMILY MINISTRIES, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | POTTER COUNTY, TEXAS |
| RITE OF PASSAGE, INC., | § § § | |
| *Defendant.* | § | 320ᵀᴴ JUDICIAL DISTRICT COURT |

## NOTICE OF FILING RULE 11 AGREEMENT

Defendant Rite of Passage, Inc. files the agreement attached hereto as Exhibit

"A" in accordance with the TEX. R. CIV. P. 11.

Respectfully submitted,

**Gordon Rees Scully Mansukhani LLP**

By:    */s/ Christopher M. Raney*
Christopher M. Raney
State Bar No. 24051228
craney@grsm.com
Hee Jin Chang
State Bar No. 24095935
hchang@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

**ATTORNEYS FOR DEFENDANT
RITE OF PASSAGE, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify this document was filed on all counsel of record by electronic service on **January 19, 2023.**

_/s/ Christopher M. Raney_
Christopher M. Raney

# EXHIBIT A

CAUSE NO. 111269-D-CV

| | | |
|---|---|---|
| ARROW CHILD & FAMILY MINISTRIES | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | POTTER COUNTY, TEXAS |
| | § | |
| RITE OF PASSAGE, INC. | § | 320TH JUDICIAL DISTRICT |
| | § | |
| *Defendant.* | § | |

## <u>ACCEPTANCE OF SERVICE AND RULE 11 AGREEMENT</u>

I, Christopher Raney, declare as follows:

1.     I, Christopher Raney, and the firm of GORDON REES SCULLY MANSUKHANI, LLP, have been retained by Defendant Rite of Passage, Inc. ("**Defendant**" or "**ROP**") as counsel in the above-captioned proceeding. I am over 18 years of age and am of sound mind.

2.     I, on behalf of Defendant, acknowledge that on **January 18, 2023**, I was provided with a copy of Plaintiff's Original Petition in the above-captioned matter (the "**Original Petition**")

3.     I have been authorized by Defendant to sign this Declaration to waive issuance of citation and formal service of process of the Original Petition on Defendant, in accordance with Texas Rule of Civil Procedure 119, and I hereby accept service of the Original Petition on Defendant's behalf on **January 18, 2023**.

4.     I further state that the following information is correct and that my mailing address, phone number and email are:

1

Christopher M. Raney
Gordon Rees Scully Mansuhani LLP
TransWestern Tower
1900 West Loop South, Suite 1000
Houston, Texas 77027
Tel. (713) 490-4823
craney@grsm.com

5.       My name is Christopher Raney. My date of birth is August 15, 1981, and my

business address is 1900 West Loop South, Suite 1000, Houston, Texas 77027. I declare under

Penalty of perjury that the foregoing is true and correct.


Executed in Harris County, Texas on January 19, 2023.


_Chris Raney_
_____
Christopher M. Raney
Counsel for Defendant




[Rule 11 Agreement on Next Page]

2

**Rule 11 Agreement**

By their counsel's signature below, Plaintiff and Defendant hereby agree, pursuant to TEX. R. CIV. P. 11, that Defendant shall have until **January 31, 2023**, to file an answer or other responsive motion or pleading to Plaintiff's Original Petition in the above-referenced matter.

**AGREED:**

Christopher Raney
Gordon Rees Scully Mansukhani, LLP
Texas State Bar No. 24051228
craney@grsm.com
TransWestern Tower
1900 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: (713) 490-4823
Fax: (713) 961-3938

**ATTORNEYS FOR DEFENDANT
RITE OF PASSAGE, INC.**

Steven C. Earl
Stilwell, Earl & Apostolakis, LLP
Texas State Bar No. 24002028
1400 Woodloch Forest Dr., Suite 590
The Woodlands, Texas 77380
Tel: 281/419-6200
Fax: 281/419-0250

**ATTORNEYS FOR PLAINTIFF
ARROW CHILD & FAMILY
MINISTRIES**

3

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gloria Flores on behalf of Christopher Raney
Bar No. 24051228
gflores@grsm.com
Envelope ID: 71955036
Status as of 1/20/2023 9:16 AM CST

Associated Case Party: Arrow Child & Family Ministries

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Steven CEarl | | efiletxsce@gmail.com | 1/19/2023 3:20:24 PM | SENT |
| Heather Scott | | Heather@woodlandstxlawfirm.com | 1/19/2023 3:20:24 PM | SENT |
| Steven CEarl | | steven@woodlandstxlawfirm.com | 1/19/2023 3:20:24 PM | SENT |
| Emory C.Powers | | emory@woodlandstxlawfirm.com | 1/19/2023 3:20:24 PM | SENT |

Associated Case Party: Rite of Passage, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher M.Raney | | craney@grsm.com | 1/19/2023 3:20:24 PM | SENT |
| Hee JinChang | | hchang@grsm.com | 1/19/2023 3:20:24 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Gloria E.Flores | | gflores@grsm.com | 1/19/2023 3:20:24 PM | SENT |